## THE ROYAL.

### THE SUPERIOR.

### THAMES TOWBOAT CO. v. THE ROYAL et al.

#### (Circuit Court of Appeals, Second Circuit. February 7, 1893.)

1. ADMIRALTY—APPEAL.
    The decision of a federal district judge upon questions of fact in a collision case should not be disturbed on appeal unless so inconsistent with evidence to the contrary, irrespective of facts depending wholly on the credibility of witnesses, as to satisfy the appellate court that they are incorrect.

2. COLLISION—TOW AND FERRYBOAT AT PIER.
    A tow in the east river was passing near a ferry slip when a ferryboat trying to make the slip crossed the bows of the tug at a distance "of about 300 ft.," but without fault failed to make the slip, and was carried out into the river, colliding with the tow. *Held,* that the decision of the trial judge that the steamer did not back into the river, but that the collision was due to the rebound, and that the tow was negligently passing too near the slip, should not be reversed by the appellate court on the ground that a mathematical calculation would show that the tow must have been at a reasonable distance from the pier, and the collision therefore must have been caused by the backing of the ferryboat, and not by the rebound, when the speed of the tow and the ferryboat, the force of the current, and other elements in the calculation, are uncertain.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Libel by the Thames Towboat Company, owner of the barge Afton, against the steam tug Royal (the Newton Creek Towing Company, claimant) and the ferryboat Superior, (the Brooklyn & New York Ferry Company, claimant,) for collision. The district court dismissed the libel as against the Superior, and entered a decree against the Royal. The Newton Creek Towing Company appeals. Affirmed.

Peter Alexander, (Alexander & Ash, on the brief,) for appellant, claimant of the Royal.

Samuel Park and Geo. B. Adams, (Wilcox, Adams & Green and Franklin A. Wilcox, on the brief,) for appellee the Superior.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This case arises from a collision which occurred in the East river, on the New York side, near the entrance to the ferry slip between piers 56 and 55, between the ferryboat Superior and the barge Afton, which was then in tow of the tug Royal. The collision occurred in the afternoon of a clear day, and the tide was strong flood. The ferryboat was making one of her regular trips from Brooklyn to the slip mentioned, and the tug and tow were proceeding down the river on the New York side on a course parallel with the ends of the piers. The Afton was being towed on a hawser about 180 feet long. The ferryboat shortly before had passed in front of the bows of the tug to make her slip. She failed to make it, and was trying to enter it when she came in contact with the tow at the bluff of the latter's starboard bow.

The question in the case is whether the tug and tow were proceeding down the river so near the ends of the piers when the collision took place that the ferryboat, notwithstanding she was not guilty of any fault or negligence, could not avoid striking the tow. Upon the evidence there is no reasonable support for the theory that the ferryboat missed making her slip, and struck the end of rack A by reason of faulty navigation; and it must be taken as established and uncontradicted that by reason of the swift and suddenly changing currents of the eddy at the slip such an occurrence is at times unavoidable, and was upon the occasion in question. If, as is contended for the ferryboat, while she was trying to enter her slip, her engine having previously been stopped and reversed, she was thrown by the eddy against the end of the division rack A, rebounded, and was carried by the tide, stern up river, against the tow before she could recover control sufficiently to keep out of the way, she was without fault; and if the tug had gone with the tow unnecessarily near the entrance of the slip, and was violating the state statute, which requires steam vessels to be navigated as near as possible in the center of the river, and by reason of her improper proximity to the slip brought her tow in the way of the ferryboat, she was properly held to be solely in fault for the collision. The learned district judge before whom the witnesses for both parties were examined delivered a careful opinion. It appears from it that he believed the witnesses who testified, in substance, that the ferryboat, when she struck the tow, was not backing to get a new start for her slip, was about halfway out of the slip,—that is, her bow was about 20 feet from the end of rack A,—and that the tug, with the tow following her, was on a course so near the ends of the piers to be only about 110 feet outside of the end of pier 56; and he disbelieved the testimony of the witnesses for the tug to the effect that the tug and tow were 300 feet away from the ends of the main piers, and that the ferryboat was backing, to make a new start to re-enter her slip, when she struck the tow. According to the well-settled rule governing appeals in admiralty, we ought not to disturb these findings, unless they are so inconsistent with evidence to the contrary, irrespective of facts depending wholly on the credibility of witnesses, as to satisfy us that they are incorrect. The counsel for the appellant has made a very ingenious and entirely

legitimate argument to bring his case within the operation of this rule. He insists that it is practically undisputed that, when the ferryboat crossed the bow of the tug to make her slip, she crossed at a distance of at least 300 feet away; that the length of the tug, (90 feet,) the length of the hawser, (at least 180 feet,) and the point of collision on the bow of the barge (15 feet aft of her stem) make the total distance from the stem of the tug to the point of contact on the barge at least 285 feet; and that at the rate of speed being maintained by the vessels, respectively, it is impossible that the ferryboat could have gone only 20 feet beyond the line of the tug's course, and upon a rebound have hit the tow. He urges that upon any such theory the tug would have struck the ferryboat, or the latter might have hit the tug, but she could not have hit the barge, which must have been nearly 600 feet behind the line of the intersecting courses when the ferryboat passed in front of the tug. He insists, on the other hand, and we agree to the proposition, that if the tug was 300 feet outside the ends of the pier, as her witnesses testify, their theory of the collision is a probable one.

The trial judge did not assume that the estimates given by the witnesses, whose testimony he accepted as true, were accurate either as to the distance of the tug from the ends of the piers, or the distance the ferryboat rebounded; but he accepted them as approximately correct, making the observation, in his opinion, that no great weight can be attached to estimates of distances in feet when no special attention was given to the subject. The controlling facts which he deemed to be established were that the ferryboat was not backing in order to make a new start for her slip when she struck the tow, and that there was such a brief interval after she rebounded and before she struck the tow that she could not practicably be put ahead. Mathematical calculations seldom form a solid basis for judgment in collision cases. The factors which enter into them are generally uncertain quantities, susceptible of so much elasticity that the resultant is apt to be fallacious. In the present case the only factor which is reliable is that of the distance from the stem of the tug to the place of the blow on the tow. Suppose the ferryboat passed the tug 300 feet in front of the tug's bow, does that mean that her stem, her stern, or her midship was 300 feet away while on the line of the intersecting course? As the ferryboat was 170 feet long, her stern may have passed the bow of the tug only 130 feet away. Were the vessels on courses at right angles, or on converging courses? Was the tug going at a speed of three or five miles an hour? Was the ferryboat going fast, or quite slow, as she was nearing her slip? With how much force did the tide operate on her stern when she rebounded? Different answers may be given, consonant with the testimony, to all these questions. If she was 200 feet away when her midship was opposite the bow of the tug; if by her rebound and the force of the tide she was carried 40 feet back, and her stem thrown up the river; if her headway was almost stopped as her bow neared her slip; and if the tug was going at a speed of 5 miles an hour,—the collision could have happened substantially as the trial judge found it did. We have not

overlooked the somewhat significant omission of the ferryboat to call her engineer, or give any evidence from her engine room. Nevertheless, the trial judge, who saw the witnesses, and had an opportunity to judge of their intelligence and candor, which is denied to us, believed those whose version he substantially adopted, and disbelieved those who located the tug 300 feet away from the ends of the pier at the time of the collision. We have no reason to suppose that he overlooked the considerations that have been addressed to us, or failed to weigh them, and we are not convinced that his judgment upon the merits is not a safer one than any we can form upon the record.

The decree is affirmed, with costs.