SACHS, Respondent, v. SACHS, Appellant

(283 N. W. 173.)

(File No. 8166. Opinion filed December 30, 1938.)

T. R. *Johnson,* of Sioux Falls, for Appellant.

*Alan Bogue,* of Parker, for Respondent.

SMITH, J. This action was commenced by August Sachs against his son, Charles Sachs, for the purpose of canceling two deeds of record as undelivered. Prior to the trial of the action, the father died, and his executor was substituted as plaintiff therein. In the complaint it is alleged: "That on or about the month of February or March, 1936, the defendant came to the plaintiff and fraudulently and falsely represented to the plaintiff that the defendant wanted to see and look over the papers and Deeds of the plaintiff herein and to see if everything was all right; that said Deeds were then in the possession of the plaintiff; that the defendant represented that he wanted to look over said papers of the plaintiff and promised and agreed to return said papers and Deeds to the plaintiff in a short time; that the plaintiff believed and relied upon the representations and statements of the defendant and gave said Deeds and other papers to the defendant for inspection and expected that the defendant herein would promptly return said Deeds and other papers to the plaintiff whenever the plaintiff so desired; that the defendant obtained possession of the two Deeds hereinbefore alleged in this manner, and not otherwise, and has ever since retained said Deeds although the plaintiff herein upon several occasions and prior to the 11th day of December, 1936, demanded that the defendant return said Deeds and other papers to the plaintiff, but that the defendant failed, neglected and refused to do so."

At the trial the following testimony was given by the witness John Mundt: "Q. To refresh your recollection, when you asked Charley if he didn't get those deeds from his father on the promise that he would return them, what did he say about that? A. Charley said: 'Maybe that's right, but I am not going to return

the deeds, because I think that the housekeeper is going to get one of those pieces of property'."

The competency of this testimony may not be questioned. Note should be made of the fact that neither the question nor the answer makes any reference to a representation by Charley as to his purpose in seeking possession of the deeds.

■ It further appears by the record, however, that, subject to the defendant's objection and motion to strike upon the ground that the same constituted hearsay testimony, Mr. John Mundt testified as follows: "He (August Sachs, the father) stated that Charley had gotten them some time prior to that, to look them over, and that he had asked him to return those deeds and some other papers, but that Charley had refused to do so; * * * he stated that they had them drawn up here in the bank, by a banker, and then—that is, he had signed them there, but he had kept the deeds and that they had remained in his box with his papers and had been kept there until Charley, his son, had come in to look them over, and he had given them to him—he said he wanted to look them over and then he would return them—and he said he would like to have these deeds back."

■ In addition to the foregoing testimony, one Henry Mundt testified as follows in referring to a conference between the said Mundt and the defendant, Charles Sachs, prior to the trial of the action: "I said 'Charley, your father claims that you came to him along last March and you wanted to look them over to see whether everything was all right and that you would return them to him, and your father says you did not return them to him and that he has been out there several times to see you and asked you to deliver them back to him and he claims these deeds were never delivered and he wants them back'."

Without other support in the evidence, the court found: Finding No. 2. "That on or about November 26, 1932, August Sachs signed and acknowledged two warranty deeds in which his son, Charley Sachs, was named as grantee, which deeds were kept and retained by the said August Sachs, the grantor, in his possession, at all times until Charley Sachs, during the month of March, 1936, procured said deeds from his father, with quite a number of his private papers, which were bound together with rubber bands, by stating to his father that he wanted to examine them and look

them over to ascertain if everything was all right, and he stated to his father that he would return said papers as soon as he examined them and looked them over, and the said August Sachs, relying upon the statements of the said Charley Sachs, and believing that his son would return said papers to him as he had agreed, handed said papers to his son for the aforesaid purpose, which deeds and the record thereof, are in words and figures as follows:" and further found: Finding No. 8. "That said deeds were never delivered by the said August Sachs to his son Charley Sachs with the intent that the said deeds should become operative as such, or with the intent that said deeds should vest title in the said Charley Sachs."

Finding No. 9. "That the said deeds, were never delivered by the said August Sachs to his son, Charley Sachs."

By appropriate assignments defendant challenges the rulings of the court under which the testimony of John Mundt, with reference to what August Sachs told him, was received and retained in evidence. The assignments further challenge the sufficiency of the evidence to support the finding that Charles Sachs had procured said deeds "by stating to his father that he wanted to examine them and look them over to ascertain if everything was all right."

It is said by the defendant that the record demonstrates the prejudice to the defendant in the rulings of the court upon the admission of the evidence to which we have adverted above because the finding that Charley Sachs procured such deeds from his father "by stating * * * that he wanted to examine them and look them over to ascertain if everything was all right," rests solely upon the foregoing hearsay testimony. That this contention of the defendant is well founded is manifest.

That the questioned testimony of John Mundt was hearsay of the purest strain is obvious. Wigmore on Evidence, Vol. 2, § 1361. It is equally clear that Henry Mundt was not purporting to testify to the hearsay conversation between himself and the father, but was only testifying to what he (Henry Mundt) had said to the defendant Charles Sachs. Although the defendant did not object to this testimony of Henry Mundt, it is not sufficient upon which to rest a finding as to what the son said to the father at the time the deeds were manually delivered. Neither is there room for

speculation as to what was in the mind of the court when it made findings 8 and 9 supra. The evidence set forth in finding No. 2 commands the conclusion that findings 8 and 9 rest upon a firm conviction that the son procured possession of the deeds under the pretext that he wished to examine them.

In the case of Williamson v. Voedisch Jewelry Co., 35 S. D. 390, 152 N. W. 508, it was said: "We are not unmindful of the rule many times announced by this court that, upon a trial to the court, the presumption is that the court disregarded incompetent evidence and based its findings only upon the competent evidence in the case. But this rule has no application where the incompetent evidence is of such character as that without it the whole probative force of the competent evidence might be so impaired as to leave it doubtful whether the trial court could or would have reached the same conclusion, if the incompetent evidence had been excluded. In other words, if we are persuaded that the trial court must have based its findings, in part at least, upon the incompetent evidence, or that the incompetent evidence was in itself the vital and controlling evidence, we cannot presume that it was disregarded."

We are persuaded that the findings of the learned trial court were based, in part at least, upon incompetent testimony. It follows, therefore, that the order and judgment of the trial court must be, and they are, reversed.

All the Judges concur.