JOHNSON, Appellant, v CHICAGO & N. W. R. CO.
et al., Respondent

(38 N. W.2d 348.)

(File No. 8918. Opinion filed March 18, 1949)

Louis H. Smith, Sioux Falls, for Appellant.
Churchill & Churchill, Huron, for Respondents.

SICKEL, J. This action was brought under the statute permitting the recovery of damages for wrongful death. On August 1st, 1941, Dean Johnson was traveling in an automobile alone, in a westerly direction, on a county highway in the vicinity of the village of Unityville in McCook County. There the defendants' railroad tracks crossed the highway at approximately right angles and the surrounding country is nearly level with no obstructions except a cornfield north of the road. As Johnson crossed the railroad tracks his car was struck by a train moving south, and his death resulted from the collision. The first trial resulted in a directed verdict for the defendants after which plaintiff appealed and the judgment was reversed. Johnson v. Chicago & North Western Railway Co., 71 S. D. 132, 22 N. W.2d 725. Then the case was retried and the jury returned a verdict for the defendants. Plaintiff has again appealed.

The first question presented on the appeal relates to the admissibility of evidence. Plaintiff asked the witness Sandburg questions calling for a conversation had between the witness and decedent before the latter started for Unityville. Objections to decedent's part of the conversation were sustained by the court on the ground that the questions called for hearsay testimony. The plaintiff then offered to prove by the witness that decedent stated to the witness that he had never been to Unityville and requested instructions as to how to reach the place. Objection to the offer was made on the same ground, and was also sustained. Appellant contends that the evidence was material to show that decedent did not know the road to Unityville and by inference that he had no knowledge of the railway crossing.

"Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom

it is sought to produce it." 31 C. J. S., Evidence, § 192; Wigmore Ev., 3d Ed., Vol. V. § 1361; Jones on Evidence, 4th Ed., § 297; Clendennen v. Bainbridge, 45 S. D. 410, 187 N. W. 727; Sachs v. Sachs, 66 S. D. 373, 283 N. W. 173. Such evidence is incompetent and does not become admissible by the death of the person who made the assertion of fact to the witness. Colbert v. Miller, 149 Neb. 749, 32 N. W.2d 500. Here plaintiff offered to prove decedent's lack of knowledge by decedent's assertion of fact to the witness. The testimony offered was hearsay, and none of the exceptions to the hearsay rule are present. The objection was properly sustained.

The next two groups of assignments numbered 5 to 33, both inclusive, according to appellant's brief, also relate to the adimssion of evidence. The transcript has been carefully examined as to each of these assignments for a complete understanding of the grounds upon which claims of error are based and to determine whether the alleged errors were prejudicial to the appellant. We have concluded that in each instance the ruling of the circuit court was either correct or that the error was harmless. The principles of law involved and their application are so well understood that a repetition of them in this opinion would serve no purpose.

Assignments numbered 34 and 35 relate to plaintiff's cross-examination of defendants' witness Watson, the engineer on the train involved in the collision. Appellant's counsel asked the witness: "Q. Mr. Watson, won't you give us an estimate of how many feet your engine covered, while that first blast of the whistle was given? A. I can figure it out for you in feet if you want it. Q. Asking you for an estimate of how far you traveled. A. Well, I will give it to you exactly." Objected to as calling for estimates as wholly immaterial and the objection was sustained. Appellant also offered to prove by the cross-examination of the witness the number of feet traveled by the train during each of four blasts of the whistle and the three intervals while passing from the whistling post to the highway, a distance of eighty rods. The purpose was to thereby establish that the last blast of the whistle ended four hundred ninety feet before

reaching the highway crossing. To this offer respondents objected on the ground that no foundation had been laid; that the evidence of the witness at most could amount to only an estimate which would be inaccurate and undependable. The objection was sustained. Appellant contends that his cross-examination of the witness was unduly restricted

■■ The trial court is vested with discretion in decretion in determining the method and extent of cross-examination, especially where the object of counsel is to test the accuracy and credibility of the witness. "If the cross examination is proceeding beyond that which is proper to test the accuracy and credibility of the witness, or is being needlessly protracted, or is being conducted in a manner which is unfair to the witness", the court may interfere, Jones on Evidence 4th Ed., § 842.

■ The witness was subjected to an extensive cross-examination. He testified that the distance from the whistling post to the highway was eighty rods; that the speed of the train at the whistling post was about fifty miles per hour and at the highway crossing about forty miles per hour; that he gave four blasts of the whistle, two long, one short and one long, the first commencing at the whistling post and the last ending on the crossing. When asked how long the first blast took and how far he traveled during that blast he said, "I don't know. I didn't step it." He was questioned about the distance traveled during the last blast of the whistle which he estimated at sixty-five to one hundred feet. Appellant proposed the line of cross-examination in question here for the purpose of obtaining further estimates from the witness and to use them as the basis of computation Computations based on estimates of the time and distance of each blast of the whistle and each interval would still be estimates. "* * * The factors which enter into them are generally uncertain quantities, susceptible of so much elasticity that the resultant is apt to be fallacious." The Royal, 2 Cir., 54 F. 204, 206; Ranum v. Swenson, 220 Minn. 170, 19 N. W.2d 327 330. Obviously the trial court did not consider such computations a proper test of the accuracy

and credibility of the witness and, therefore, sustained respondents' objections. We have concluded that there was no abuse of discretion in so doing.

Appellant requested an instruction stating that: "* * * it is for the jury to say whether the defendant did provide a good, sufficient and safe crossing, and you are instructed that if this railroad crossing was peculiarly and unusually hazardous it is for the jury to say whether warnings and safeguards in addition to those mentioned in the above statute [52.0923] should have been provided by the railroad company to give reasonable protection to the public." This instruction was refused and the appellant assigns this refusal as error.

The statute referred to above provides that every railway company shall "construct at all points where such railway crosses any public road, good, sufficient, and safe crossings and cattle guards, and erect at such points, at a sufficient elevation from the road to admit of free passage of vehicles of every kind, a sign with large and distinct letters placed thereon to give notice of the proximity of the railway and warn persons of the necessity of looking out for the train." This statute imposes upon the railway company as a minimum protection the duty to erect at all points where railways cross public roads a sign calculated to give notice to and warn all persons traveling the highway of the proximity of the railway and the necessity of looking out for the train. The substance of this statute was given to the jury by instruction Number 6. There the court specifically stated that the requirement of the statute was satisfied by one sign, but did not instruct the jury that compliance with the statutory requirement of one sign was sufficient to give notice of the proximity of the railway and to warn decedent of the necessity of looking out for the train under the circumstances of this case. The court specifically instructed the jury that: "* * * if deceased did not see the crossing or crossing signs, or in the exercise of ordinary care could not have seen the crossing or crossing sign, or that there was a railroad track there, and did not see the oncoming train and was not aware of the presence of either, and in the

exercise of ordinary care and prudence could not have discovered the proximity of such objects in time to avert the accident, then he was not guilty of contributory negligence." This instruction submitted to the jury the question of whether or not the kind of sign erected by the respondents, located on the south side of the road, was under all the surrounding circumstances sufficient to give decedent notice of the proximity of the railway and to warn him of the necessity of looking out for the train. Further than this the court was not required to go according to the law of this case as established by the statute, the former opinion of this court and instructions requested by the appellant.

 Appellant also contends that the court erred in not instructing the jury that the defendants are liable for all damages resulting from failure to erect crossing signs and from neglect to ring the bell or whistle, as required by the statutes. SDC 52.0923, 52.0924. Liability of defendants for failure to perform the duties imposed by these statutes is still subject to the defense of contributory negligence. It was the duty of the court to submit the case to the jury on instructions defining the law of negligence and contributory negligence, and to apply the law to the issues of fact in the alternative. The court properly instructed the jury on these subjects and on the measure of damages.

 Appellant requested an instruction on the emergency rule, which was refused, and the question is whether that rule is applicable to the facts in this case. The rule is as follows: "One suddenly confronted by a peril, through no fault of his own, who, in the attempt to escape, does not choose the best or safest way, should not be held negligent because of such choice, unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." Johnson v. Townsend, 195 Minn. 107, 261 N. W. 859, 861; Campbell v. Jackson, 65 S. D. 154, 272 N. W. 293; Zeller v. Pikovsky, 66 S. D. 71, 278 N. W. 174; Stacey v. Patzloff, 67 S. D. 503, 295 N. W. 287. The rule does not apply in this case unless it appears from the evidence that decedent was in real and imminent peril as he approached the railway crossing, and that he in no way con-

tributed to this situation by his own want of due care. Miller v. Stevens, 63 S. D. 10, 256 N. W. 152. It does not excuse negligence in getting into a perilous position. Iverson v. Knorr, 68 S. D. 23, 298 N. W. 28. It does require the jury to consider the fact of sudden peril as a circumstance in determining the reasonableness of the means used to escape. Nichols v. Minnesota Milk Co., 212 Minn. 333, 4 N. W.2d 84. The evidence in this case shows that from a distance of five hundred feet east of the track decedent continued his course westward at the rate of ten or twelve miles per hour without noticeable change until he was just about at the crossing when he turned sharply to the left and the car was struck by the train "ahead of the back seat." The left turn was obviously made at the time decedent discovered the approaching train, in a desperate effort to avoid the collision. No one contends that after decedent discovered the peril he used unreasonable means of escape. Obviously he had no choice between courses of action at that time. Under these circumstances the emergency rule is inapplicable. Hanson v. Matas, 212 Wis. 275, 249 N. W. 505, 93 A. L. R. 546.

Finding no reversible error in the record the judgment is affirmed.

All the Judges concur.