**Bette L. VOIGT, Appellant,**

v.

**CHICAGO & NORTHWESTERN RAIL-WAY COMPANY, Appellee.**

**No. 18579.**

United States Court of Appeals
Eighth Circuit.

Aug. 1, 1967.

---

**8.** *Brown* was overruled on other grounds in Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

Samuel W. Masten, Sioux Falls, S. D., for appellant; Davenport, Evans, Hur-witz & Smith, Sioux Falls, S. D., and Heidepriem & Widmayer, Miller, S. D., on the brief.

A. D. Sommervold, Sioux Falls, S. D., for appellee; M. T. Woods, Sioux Falls, S. D., on the brief.

Before VOGEL, Chief Judge, and GIBSON and HEANEY, Circuit Judges.

VOGEL, Chief Judge.

Plaintiff-appellant, Bette L. Voigt, brings this appeal from a judgment based on a jury verdict for defendant-appellee, Chicago & Northwestern Railway Company, in a personal injury action which arose out of the collision of an automobile with a railroad crossing signal. Jurisdiction is based upon diversity and the requisite amount in controversy. Liability allegedly arises out of appellee's (1) negligent construction and maintenance of a railroad crossing signal and/or (2) the maintenance of an absolute nuisance on a public highway.

Appellant at the time of the accident was riding as a guest passenger on the right-hand front seat of a Karmann Ghia Volkswagen automobile driven by Margaret Valentine. The accident occurred on October 9, 1963, at approximately one o'clock a. m., near where Dakota Avenue, the main street of Huron, South Dakota, intersects with appellee's railroad tracks. Earlier in the evening, prior to the accident, appellant had joined several friends for bowling. After they finished bowling, the whole group stopped at two nightclubs in Huron. When the appellant left the second of these places she got into the automobile driven by Margaret Valentine. Both appellant and Margaret Valentine testified that they drank moderately that evening but both claimed to be sober prior to and at the time of the accident. Once appellant had joined Margaret Valentine in the automobile, they proceeded to drive east along Commercial Avenue to the point where it intersects with Dakota Avenue. Margaret Valentine stopped at the stop sign at the intersection, noticed that there was no traffic either north or south, and then made a broad right-hand turn to the

south onto Dakota Avenue. This turn carried the car across the center line of Dakota Avenue and into the lane for northbound traffic. She was cutting back into her own lane of traffic when she collided with the railroad crossing signal. At the time of the accident Margaret Valentine was traveling at a speed somewhere between fifteen and thirty-five miles per hour. Although the weather in the vicinity of Huron was generally clear on the night of the accident, Margaret Valentine testified that there was some ground fog in the area.

Dakota Avenue is fifty feet wide at the place of the accident. Although the street is by municipal ordinance designated a four-lane street south of appellee's railroad tracks, north of the tracks where the accident occurred the street carries a two-lane designation. The crossing signal with which Margaret Valentine's car collided is a "Griswold" type signal, with a rotating stop sign, originally erected in 1929 with the approval of the City of Huron and the South Dakota Railroad Commission. The signal was automated in 1956, again with the approval of the State Commission. The base upon which the crossing signal is mounted is a diamond-shaped concrete slab which is one foot nine inches high and protrudes approximately two feet eight inches on each side of the highway center line. There is one red 50-watt bulb mounted about one foot above the base on the west side of the crossing signal that warns drivers of the base's existence. Nowhere else in South Dakota did appellee railroad use this center type of crossing signal. A traffic count conducted by the City of Huron indicated that the average daily traffic count on Dakota Avenue, both north and south of the signal, in September 1963 was 11,654 vehicles.

Appellant was a resident of Huron but she did not drive. Although she had seen the signal before the day of the accident, she was not familiar with the street and the railroad crossing where the accident occurred. At the time of the accident, appellant was 26 years old, in good health, married, had one child, and was employed as a telephone operator. As a result of the accident, she sustained a loss of vision, a loss of memory, and loss of her ability to read, write or work.

All the grounds of error claimed by appellant are based either upon the alleged impropriety of jury instructions as given by the court or the court's failure to give instructions requested by appellant. Although numerous jury instructions are contested, only two of the issues raised thereon will be discussed in this opinion: (1) The standard of care exercisable by appellee railroad, and (2) the allocation of the burden of proof.

■ I. *Standard of care.* Appellant first takes exception to the trial court's failure to instruct the jury, as requested, that compliance with the statute or regulation meets only the *minimum duty* owed by the railroad, for this was recognized as the proper standard by the Supreme Court of South Dakota in Johnson v. Chicago & N. W. R. Co., 1949, 72 S.D. 580, 38 N.W.2d 348, at page 351, wherein the court stated:

"* * * This statute imposes upon the railway company as a *minimum protection* the duty to erect at all points where railways cross public roads a sign calculated to give notice to and warn all persons traveling the highway of the proximity of the railway and the necessity of looking out for the train." (Emphasis supplied.)

The statute referred to in *Johnson,* supra, and the one under consideration in the instant case is S.D.C. 52.0923 which provides in pertinent part:

"Every corporation * * * operating a railway shall * * * construct at all points where such railway crosses any public road, good, sufficient, and safe crossings * * * and erect at such points, at a sufficient elevation from the road to admit of free passage of vehicles of every kind, a sign with large and distinct letters placed thereon to give notice of the proximity of the railway and warn per-

sons of the necessity of looking out for the train. * * * "

After quoting the foregoing statute to the jury, the trial court then stated:

*"This statute sets the standard of care of the railroad."* (Emphasis supplied.)

Subsequently it charged the jury as follows:

"You are instructed that what constitutes ordinary and reasonable care on the part of a railroad company in the maintenance of its public crossings is to be determined in the light of all the surrounding facts and circumstances. The care required to prevent the infliction of injury is always proportioned to the danger and chance of injury. What may be due care in one locality or in reference to a particular crossing may be negligence with respect to another crossing."

These two instructions are contradictory and confusing. In the first or italicized instruction the court tells the jury that the standard of care required of the railroad at railroad crossings is fixed by the statute it has just read to them. In the second instruction the court sets the standard of care of railroads in accordance with the possibility of danger at each public crossing, such standard to be determined in the light of all the facts and surrounding circumstances. Plaintiff excepted to the instruction on the ground that it did not contain a statement to the effect that compliance by the railroad with any regulation or statute would only be the *minimum* standard required of the defendant and not necessarily the standard to be applied by the jury. The additional instruction requested was denied. We think that under the circumstances plaintiff was entitled to a clarifying instruction, such as indicated in *Johnson*, supra, for it is apparent that the jurors were misled and confused by the charge as given. The fact that the jury remained in deliberation for approximately two days, during which time they twice asked for enlightenment as to the court's instructions regarding rail-road crossing signals, "prime causes of negligence" and "fault", and were finally given a full transcript of the charge, lends support to the assertion that the jurors were indeed confused.

II. *Burden of proof.* Appellant urges that the trial court improperly instructed on the burden of proof. In her complaint appellant alleged in the first count negligent construction and maintenance of the signalling device and in the second count the maintenance of an absolute nuisance. The trial court, in setting the burden of proof in this civil action, instructed as follows:

"The burden is upon the plaintiff to prove by a fair preponderance of the evidence *all the allegations of her complaint*. If the plaintiff has not fulfilled this burden, the defendant is entitled to your verdict." (Emphasis supplied.)

The plaintiff properly excepted to this instruction:

"The plaintiff excepts to the Court's instruction as given orally to the jury in reference to the burden of proof being upon the plaintiff to prove all the allegations of her complaint, whereas she only has to prove those allegations which are necessary to sustain her recovery herein. That's all the exceptions, your Honor.

"The Court: You've kind of got a hooker on that last one. All I'm saying is that—I'm not saying you've got to prove every allegation of your complaint. I merely say you've got the burden of proving any allegation in the complaint that you want to assert, so I don't believe there's any validity to the objection. The objection is overruled and an exception allowed."

This exchange was made out of the hearing of the jury. The court in its colloquy with counsel properly recognized that it is in fact not necessary for the plaintiff to prove *all* allegations of her complaint in order to sustain her burden of proof; but at no point did the trial court make this clear to the jury or indicate to the jury that appellant

need only prove those allegations necessary to sustain recovery. The statement of the court in answer to the appellant's exception indicates that the court intended to convey to the jury a different legal principle on burden of proof than the clear language of his instructions would indicate.

■ The instruction, in requiring appellant to prove all the allegations of her complaint, placed an unwarranted burden of proof upon appellant. It has long been generally recognized that it is reversible error to place the burden of proof on the wrong party or to place an unwarranted burden of proof on one party. See, e. g., Rivera v. Parma, 1960, 54 Cal.2d 313, 5 Cal.Rptr. 665, 353 P.2d 273, 275; Massie's Ex'x v. Massie's Ex'x, 1941, 288 Ky. 370, 156 S.W.2d 195, 196; Long Valley Land & Development Co. v. Hunt, 1928, 51 Nev. 5, 266 P. 917; Martin v. Pribil, 1939, 186 Okl. 27, 95 P.2d 853, 855; Golden State Mutual Life Ins. Co. v. Summers, 1957, Tex.Civ.App., 301 S.W.2d 491, 493. See, also, Annotation, 87 A.L.R.2d 539, 570–575, 1963. As set forth in 53 Am.Jur., Trial, § 677, p. 521:

> "An instruction placing the burden of proof on the wrong party, or placing on one party an unwarranted burden, is misleading and erroneous, and may properly be refused. The giving of such an instruction constitutes ground for reversal, unless it relates to an issue or question which is immaterial."

See, also, § 742, p. 553:

> "A requested charge which in its tendency is misleading in that it is calculated to impress upon the jury that a greater measure of proof is necessary than is actually required by the law of the forum is properly refused, and, if given, may constitute prejudicial error."

■ Most of the authority in this area deals with the trial court's improper instruction on the shift of a burden or the improper allocation of the burden of proof under a statutory provision; but it is clear that regardless of what factual situation is involved, it is error to instruct that a party must bear a greater burden of proof than is in fact required for recovery. Such was the effect of the trial court's instruction herein.

Appellee claims that the court's instruction did not place an unwarranted burden on appellant because the trial court, in its preliminary instructions, set out only such allegations as were necessary for the plaintiff to sustain her cause of action and the complaint was not read to the jury, nor were the pleadings sent with the jury to the jury room.

■ The record indicates that in the preliminary instructions the court instructed:

> "The plaintiff claims that the proximate cause of her injuries was the negligent erection, installation, maintenance and operation of said signalling device by the defendant railroad.

> "Plaintiff also claims that the maintenance by the railroad of said signalling device, in addition to being hazardous, also constituted an absolute nuisance."

Subsequently full written instructions were submitted to the jury. Therefore, both appellant's negligence claim and nuisance claim, each of which constituted a separate count of her two-count complaint, were set out in writing and submitted to the jury along with the written instruction that appellant must prove all allegations of her complaint. Although the complaint was not read, it is clear that the substance of the complaint was submitted to the jury. The appellant could recover if she proved either of the major allegations of her complaint and it was error for the trial court to instruct that she had the burden to prove all of the allegations of her complaint.

Although additional grounds of error are urged by appellant, they need not be considered for the errors herein reviewed control and require that this case be reversed and remanded for a new trial.