Arthur Wachtel, J.
This is an action for breach of warranty of a sofa and chair, for the purchase price of $266.94. The defendant counterclaims for the sum of $260 representing balance due for goods so delivered. The sofa and chair were purchased from the defendant in January, 1955 and were delivered during the said month. However, the plaintiff testified that the furniture could not be moved through the door; the driver called the defendant and with the defendant’s permission sawed one leg off the sofa and one leg off the chair despite plaintiff’s objections and she refused to sign the “ sales slip ” at this point. Thereafter, attempts were made by the defendant to make repairs, the first repair being made about a month later. However, the plaintiff contended that both legs thereafter came off and in about March, there was another visit from the repairman but he could not repair it at the home and said that he had to take out the pieces and left without making any repairs. No part of the purchase price was paid, by plaintiff although her account was credited with the sum of $6,94. In *694 May of 1955, plaintiff submitted the ease to her attorney. This action was commenced on December 1, 1955. The defendant contends that the sole obligation on its part is to make whatever repairs were necessary and that the defendant is still ready, able and willing to make such repairs.
The defendant relies upon a clause on the back of the sales ticket which states as follows: “ It is expressly understood and agreed that the seller is herewith empowered and authorized to repair or exchange, at its discretion, any of the chattels set forth on the reverse side hereof, in the event the same are delivered in an alleged defective condition. ’ ’ Defendant contends that its liability is limited by this clause and that under section 152 of the Personal Property Law the implied warranty of merchantability is, in this case by the express agreement of the parties, negatived and replaced by the defendant’s covenant to make repairs. Defendant, in support of its contention, relies upon the leading New York case of Lumbrazo v. Woodruff (256 N. Y. 92) and also cites Plimpton v. Brown Bros. Co. (224 N. Y. 724); Kibbe v. Woodruff (94 Conn. 443); Alaska Pacific Salmon Co. v. Reynolds Metals Co. (163 F. 2d 643) and Lee v. Industrial Laundry Mach. Co. (261 App. Div. 741, 744).
Section 152 of the Personal Property Law provides: ‘ ‘ Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived, or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale.”
The rule has been stated by the Court of Appeals in Lumbrazo v. Woodruff (supra, p. 97) as follows: “ Neither party was obliged to enter into this contract, and there is no public policy which prevents adult persons of sound mind making such agreements as they please, not prohibited by statute, or contrary to natural justice and good morals. ’ ’ This rule has been applied to business transactions wherein the seller and buyer bargain in respect of the sale of certain merchandise and expressly agree as an integral part of the contract of sale, that only warranties expressed in the contract shall govern, but no other, and the future contingency of performance of other warranties express or implied is expressly disclaimed. Thus, in business transactions involving the productivity of seeds (Lumbrazo v. Woodruff, supra) or fruit trees (Plimpton v. Brown, supra) or where the disclaimer is an express condition of the contract of which the parties in the course of business negotiations have knowledge or are chargeable with knowledge (cf. Alaska Pacific Salmon Co. v. Reynolds Metals Co., supra, see Lee v. Industrial *695 Laundry Mach. Co., supra) the rule as stated by the Court of Appeals applied and it may well be said that neither party was obliged to enter into the contract and there is no public policy which prevents adult persons of sound mind making such agreements as they please. But this is not the complete statement of the rule. As stated in Williston on Sales (rev. ed., Vol. 1, § 239a): “If express warranties in a contract are in their nature inconsistent with the warranties which would have been implied had none been expressed, it would indeed be violating the intention of the parties to imply warranties, and express warranties which relate to the same matter as those which the law would otherwise imply may be deemed inconsistent, but the principle should extend no farther. An express warranty is generally exacted for the protection of the buyer, not to limit the liability of the seller. The fact that a seller expressly warrants a machine to be made of the best steel ought not to exclude an implied warranty that the machine is properly manufactured and will do the work such machines are designed to do, if such warranties would otherwise be implied. Excellent authorities supported this view at common law. And it is expressly so provided in the Sales Act, which makes no distinction in this respect between written and oral contracts.”
Williston quotes (rev. ed., vol. 1, § 239b) from the Georgia decision of Roebling’s Sons Co. v. Southern Power Co. (142 Ga. 464, 468) as follows: “ Suppose that a purchaser should order from a manufacturer a table warranted to be of certain dimensions and with certain ornamentations, can it be contended that this would exclude an implied warranty that the table should be properly put together, and that such a contract would be fulfilled by supplying a table with the dimensions and ornamentations specified, although it might be constructed of such inferior material as to fall down as soon as the purchaser should place a dictionary upon it and turn to the word ‘ warranty ’? ”
It was on this theory that this court held that in the case of the sale of a washing machine to a housewife, an express warranty set forth in an instrument separate and apart from the bill of sale and enclosed in the carton in which the washing machine was placed, was not inconsistent with and did not nullify an implied warranty of merchantability pursuant to subdivision 6 of section 96 of the Personal Property Law. (Marino v. Maytag Atlantic Co. & Tune-In Radio & Appliance Corp., 141 N. Y. S. 2d 432, 438.) So in the case at bar, the delivery of a sofa and a chair, the legs of which were sawed off with the defendant’s permission and against plaintiff’s objec *696 tion at the time of delivery, can hardly be deemed compliance with the contract. Furthermore, “ The controlling principle is clear, the buyer must have been given reasonable notice of the intended exclusion before the bargain is complete. * * *
The disclaimer of warranty by the seller must be either known by the buyer or he must be chargeable with knowledge, if the facts are such that a warranty would exist had there not been a disclaimer.” (1 Williston on Sales [rev. ed.], § 239c.) See, also, Alaska Pacific Salmon Co. v. Reynolds Metals Co. (supra); Spinella v. Atlantic Tug & Equip. Co. (283 App. Div. 259, 261). This requirement conforms with “ natural justice ” to which the rule of Lumbrazo v. Woodruff is subject.
The measure of damages in the case of breach of warranty of quality, in the absence of special circumstances showing proximate damage of a greater amount is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. (Personal Property Law, § 150, subd. 7.) No evidence of contrasting values between the furniture as purchased if it had answered to the warranty and the value of the furniture as delivered was proved by the plaintiff. However, the overpayment of $6.94 credited to the account should be returned to plaintiff.
Accordingly, judgment for the plaintiff for $6.94. Counterclaim dismissed. The furniture shall be made available to the defendant upon demand.