ECKSTEIN, APPELLEE, *v.* CUMMINS, APPELLANT; MAUMEE
VALLEY DODGE, APPELLEE.

2

(No. 7501—Decided April 5, 1974.)

*Mr. Arthur Wilkowski* and *Mr. Charles Bloom,* for appellee Richard Eckstein.

*Mr. Richard S. Baker* and *Mr. Frank D. Guthrie,* for appellant.

BROWN, J. This is an appeal from the final judgment on a non-jury award of the Common Pleas Court of Lucas County by defendant-appellant, Chrysler Motors Corporation, in favor of plaintiff-appellee, Richard Eckstein, in an action seeking damages of $10,000 or, in the alternative,

the revocation of the acceptance, or the rescission of a contract and a refund of the purchase price for a 1971 Dodge Dart automobile which plaintiff purchased from defendant-appellee, Maumee Valley Dodge, Inc.

The Court of Common Pleas, in granting a judgment for plaintiff, ordered a rescission of the purchase contract and that defendant Chrysler Motors Corporation replace the automobile or refund the purchase price with interest.

Plaintiff produced six witnesses who amply proved, without contradiction, that within the first block the 1971 Dodge Dart was operated, after its purchase by plaintiff, and continuously thereafter, it evidenced a noise, hum and vibration when it reached a speed of 35 MPH to 40 MPH and above that speed. The dealer, defendant Maumee Valley Dodge, tried valiantly, with frequent and many adjustments and replacements of parts at plaintiff's request, to eliminate the vibration and noise defects.

During the year following the sale, the period covered by the Chrysler Corporation warranty, on a number of separate returns of the plaintiff's automobile to the dealer, Maumee Valley Dodge, the dealer replaced, one after another, the following parts: alternator, water pump, fluid fan, power steering pump, manifold, exhaust, weights on transmission, torque connector, crankshaft, and motor mounts. The dealer also had the car sent to the Chrysler Training Center for adjustments. None of these efforts modified or eliminated the vibration, noise and hum which this automobile had at the time of purchase.

After two years, during which the automobile was driven 18,000 miles, plaintiff filed this action. At the close of plaintiff's evidence, the defendant, Maumee Valley Dodge, moved for its dismissal as a party-defendant and the trial court granted such motion.

The defendant Chrysler Motors Corporation moved for a directed verdict. Counsel for such defendant stated that Chrysler Corporation was not a party and that he (counsel) did not represent Chrysler Motors Corporation, but was appearing on behalf of "W. W. Cummins, Agent for Chrysler Corporation, and in that capacity" was mov-

ing for a directed verdict. The trial judge observed that W. Cummins was an agent for both Chrysler Corporation and Chrysler Motors Corporation, and thereupon overruled the motion for a directed verdict for defendant, Chrysler Motors Corporation.

Thereafter, after a submission of briefs by both parties, the trial judge made findings of fact separate from conclusions of law and entered a judgment order that plaintiff recover of the defendant a replacement new car with the same options free of substantial defects at no cost to plaintiff, or, in the alternative, damages in the sum of $3,461.54, with interest from May 4, 1971, and costs. As part of such judgment, the plaintiff was ordered to assign title for the 1971 Dodge Dart to defendant, Chrysler Motors Corporation, upon a satisfaction of such judgment.

We will first consider the second assignment of error of defendant Chrysler Motors Corporation which involves a procedural and jurisdictional question and states as follows:

"When it appears on the face of the record that no service of process was ever made on defendant-appellant, Chrysler Motors Corporation, the trial court erred in entering judgment against said defendant-appellant."

The defendant Chrysler Motors Corporation, in its answer setting forth four defenses, did properly allege, pursuant to Civil Rule 12(B), in its third defense, that the trial court lacked jurisdiction over Chrysler Motors Corporation by reason of the insufficiency of process and insufficiency of service of process on the defendant.

The record reveals, by return receipt number 330354, that a summons and a copy of the Complaint was directed by certified mail to "W. Cummins, Agent for Chrysler, P. O. Box 857, Detroit, Michigan," and the receipt form is stamped "June 20, 1972, Chrysler Corporation, Detroit, Michigan, picked up by————." The initials of the person by whom it was picked up, following the word "by," are illegible. The initials might be those of W. Cummins, but it would take a scholar in hieroglyphics to hazard an educated guess.

The caption of the case appearing in the Complaint and in the copy of the summons made clear that a party-defendant was W. Cummins, Agent for Chrysler Motors Corporation. The summons and complaint were directed to W. Cummins, as such agent, at a specific address in Detroit. These were received and accepted in writing by Chrysler Corporation through Cummins or someone else it authorized to accept service of process. There was an appearance of authority, reasonable under the circumstances, given by Chrysler Motors Corporation, that Chrysler Motors Corporation or W. Cummins, agent for both corporations, could accept process for it. Chrysler Motors Corporation received actual notice of the Complaint and legal action, as is evidenced by the Answer it filed, designated "Answer of Defendant Chrysler Motors Corporation," which set up its four defenses and proceeding to a trial on the merits.

Any defect in the service of process could not have been prejudicial to Chrysler Motors Corporation. The confusion surrounding the proper person or agent to serve was created by the two Chrysler corporate enterprises, jointly, by using the same logogram reference in the printed warranty issued by Chrysler Corporation for the 1971 Dodge Dart in controversy, stressing "Chrysler" without a designation of affiliation with either corporation.

Therefore, an actual service of process by certified mail was made upon defendant Chrysler Motors Corporation and was sufficient to satisfy the requirements of Civil Rules 4.1(1) and 4.2(6). Civil Rule 4.2 provides as follows:

"Service of process, except service by publication as provided in Rule 4.4(A), pursuant to Rule 4 through Rule 4.6 shall be made as follows: * * *

"(6) Upon a corporation either domestic or foreign: by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation by certified mail at any of its usual places of business; or by serving an officer or a managing or general agent of the corporation * * *."

The trial court also had the power to amend the proc-

ess or proof of service to reflect the fact that Chrysler Motors Corporation received process in substantial compliance with Civil Rule 4, pursuant to Civil Rule 4.6(B), which provides as follows:

"(B) Amendment. The court within its discretion and upon such terms as are just, may at any time allow the amendment of any process or proof of service thereof, unless the amendment would cause material prejudice to the substantial rights of the party against whom the process was issued."

Notice of the breach of warranty by the seller was given to the plaintiff's immediate seller, Maumee Valley Dodge, pursuant to R. C. 1302.65(B),(C), (1) and (D). The notification which saves the buyer's rights under R. C. Chapter 1302 need only be such as to inform the seller that the transaction is claimed to involve a breach, thus opening the way for a normal settlement through negotiation (Comment 4 to R. C. 1302.65). The details and mechanical technicalities and specifics constituting the breach need not be explained to the seller, and thus the evidence reveals that sufficient notice of the breach was given to the sellers in this case.

If Maumee Valley Dodge Corporation, or Chrysler Motors Corporation contend that another person or entity, as the seller of the vehicle, is liable or answerable over to one or both of them, either defendant had the right to notify such other person or entity—namely, Chrysler Corporation—so that the latter would also be bound by the judgment rendered. R. C. 1302.65 (E) (1); cf. *Stephenson* v. *Duriron Co.* (S. D. Ohio 1968), 292 F. Supp. 66; cf. R. C. 1303.76.

Therefore, the second assignment of error is without merit.

The first assignment of error is as follows:

"When there were no findings of fact nor any evidence to establish that defendant-appellant, Chrysler Motors Corporation (a) was a party to the contract of sale, (b) manufactured the automobile, or (c) either expressly or impliedly issued any warranties for the automobile, the trial court erred in entering judgment against said defendant-appellant."

This assignment of error is not well taken.

Carl Kasher, President of Maumee Valley Dodge, said he was positive that he and his dealership was an agent for Chrysler Motors Corporation. Therefore, Maumee Valley Dodge, which had consummated a sale, was fully responsible for all service requirements under the warranties given by Chrysler Corporation and, by reason of its agency relationship with Chrysler Motors Corporation, made the latter (Chrysler Motors Corporation) liable as principal and seller. Both Maumee Valley Dodge and Chrysler Motors Corporation bore obligations and liabilities as sellers. R. C. 1302.01 (A)(4).

Even if the evidence does not support a finding that Chrysler Motors Corporation was the manufacturer, its liability can be predicated upon its status as the seller.

Maumee Valley Dodge was in privity of contract with plaintiff and the warranties followed personal property from Maumee Valley Dodge to the plaintiff, thereby making the principal, Chrysler Motors Corporation, liable as a seller on a breach of warranty theory. R. C. 1302.01(A) (4) and 1302.26[1] comment 2; *U. S. Fidelity & Guaranty Co.* v. *Truck & Concrete Equipment Co.* (1970), 21 Ohio St. 2d 244; cf. *Hawkins Construction Co.* v. *Matthews Co., Inc.* (1973), 190 Neb. 546, 209 N. W. 2d 643. The purchase order was required to be accepted by Maumee Valley Dodge, thus creating the contractual relationship between Maumee Valley Dodge and the purchaser, the plaintiff, even though Chrysler Corporation conveyed the express warranty for parts and labor. R. C. 1301.01(K).[2]

[1]R. C. 1302.01(A)(4) provides:

"(4) 'Seller' means a person who sells or contracts to sell goods."

R. C. 1302.26 provides, inter alia:

"Express warranties by affirmation, promise, description, sample.

"(A) Express warranties by the seller are created as follows:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. * * *"

The third, fourth, fifth and sixth assignments of error are as follows:

"3. When the disclaimer of implied warranties and limitation of liability contained in the contract for the sale of the automobile fully complies with the statutes of this state permitting such disclaimer and when there was no evidence of any unconscionability, the trial court erred in ruling that the disclaimer was unconscionable.

"4. When there was no evidence to support the conclusion that the terms and conditions of the contract were not pointed out to plaintiff-appellee or that they were not read or understood by him, the trial court erred in finding that as fact.

"5. When all claims for personal injury had been dismissed and the sole remaining question was whether defendant-appellant breached a contract, the trial court erred in applying a negligence theory and the doctrine of res ipsa loquitur to eliminate deficiencies in the evidence necessary to establish the breach.

"6. When there was no evidence or findings that any parts, materials, or workmanship in plaintiff-appellee's automobile were defective and no evidence of any refusal or failure to repair or replace any defective parts, the court erred in ruling that there was a breach of an express warranty which limited remedies to repair or replacement of defective parts."

These assignments require an examination of the law pertaining to defendant's obligation under the law of express and implied warranties applied to the facts in this case, giving particular attention to the written purchase order signed by plaintiff which contained on the reverse side, as part of the purchase contract, the following paragraph relevant to warranties and disclaimers of warranties in the following large and distinct type:

---

[2]R. C. 1301.01 (K) provides:

" 'Contract' means the total legal obligation which results from the parties' agreement as affected by Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, and any other applicable rules of law."

"7. NO WARRANTIES ARE MADE OR WILL BE DEEMED TO HAVE BEEN MADE BY EITHER THE DEALER OR THE MANUFACTURER OF THE NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS FURNISHED HEREUNDER, EXCEPTING ONLY CHRYSLER CORPORATION'S CURRENT PRINTED WARRANTY APPLICABLE TO SUCH VEHICLE OR VEHICLE CHASSIS, WHICH WARRANTY IS INCORPORATED HEREIN AND MADE A PART HEREOF AND A COPY OF WHICH WILL BE DELIVERED TO BUYER AT THE TIME OF DELIVERY OF THE NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS. SUCH WARRANTY SHALL BE EXPRESSLY IN LIEU OF ANY OTHER WARRANTY, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THE REMEDIES SET FORTH IN SUCH WARRANTY WILL BE THE ONLY REMEDIES AVAILABLE TO ANY PERSON WITH RESPECT TO SUCH NEW MOTOR VEHICLE OR MOTOR VEHICLE CHASSIS."

Defendant contends that the elements of the disclaimer of either express or implied warranties relieves it of liability in this case, because such disclaimer is expressed in language and in a manner approved by R. C. 1302.29, which provides, in part:

"(B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

In construing the word "conspicuous," R. C. 1301.01 (J) provides:

" 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as NONNEGOTIABLE BILL OF LADING) is conspicuous. *Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.* But in a telegram any stated term is 'conspicuous.' * * *." (Emphasis added.)

In interpreting the above statutes and similar lan-

guage in parallel codes, see the Official Comments to Uniform Commercial Code; cf. *Marion Machine Foundry & Supply Co.* v. *Cincinnati Coffin Co.,* 162 Ohio St. 455.

Plaintiff counters the contention of defendant with the proposition that the disclaimer of liability for express or implied warranties, except for an express warranty with a disclaimer of liability that is not less than the implied warranty of merchantability and fitness for a particular purpose, constitutes a warranty which is unconscionable as to the warranty and disclaimer and, therefore, void under the provisions of R. C. 1302.15, which provides:

"(A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

The trial judge held that the express warranty and disclaimer of warranty in this case were unconscionable and void under R. C. 1302.15. There was ample evidence to support this finding and judicial determination.

To place the purchaser of a defective vehicle incapable of repair in the anamolous position of having no actionable claim for relief pursuant to the strict language of the express warranty and disclaimer therein, because the precise nature of the defect cannot be determined and the plaintiff cannot identify any defective part, the replacement of which could remedy the defect, would be to defeat the very purpose of the warranty which had been given to the purchaser. Such a result would substantially deprive the buyer of the benefit of his bargain and is unconscionable. Although the warranty and disclaimer, which is strictly limited to parts, is not unconscionable on its face, it

cannot be applied to the facts of this unique case in a conscionable manner. Otherwise, there would be non-compliance with R. C. 1302.15 and 1302.93(B).[3] *Meyer* v. *Packer Cleveland Motor Co.* (1922), 106 Ohio St. 328; *Henningsen* v. *Bloomfield Motors* (1960), 32 N. J. 358, 161 A. 2d 69; *Hardy* v. *General Motors Acceptance Corp.* (1928), 38 Ga. App. 463, 144 S. E. 327; cf. *Manheim* v. *Ford Motor Co.* (Fla. 1967), 201 So. 2d 440; *Walsh* v. *Ford Motor Co.* (1969), 59 Misc. 2d 241, 298 N. Y. S. 2d 538; *Jacobs* v. *Metro Chrysler-Plymouth, Inc.* (1972), 125 Ga. App. 462, 188 S. E. 2d 250; *Greeno* v. *Clark Equipment Co.* (N. D. Ind. 1965), 237 F. Supp. 427.

R. C. 1302.29,[4] casts the burden upon the seller to prove a disclaimer of warranties. Where, as here, the seller was unable to cure the defect in plaintiff's automobile, the express warranty, and its disclaimer which provided for a contractual modification and limitation of the rights and remedies of the buyer failed of its essential purpose and the ''circumstances caused an exclusive or limited remedy

---

[3]R. C. 1302.93(A) and (B) provides:

''(A) Subject to the provisions of divisions (B) and (C) of this section and of section 1302.92 of the Revised Code on liquidation and limitation of damages:

''(1) the agreement may provide for remedies in addition to or in substitution for those provided in sections 1302.01 to 1302.98, inclusive, of the Revised Code and may limit or alter the measure of damages recoverable under such sections, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

''(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

''(B) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code.''

[4]R. C. 1302.29, in part, provides:

''(A) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of section 1302.05 of the Revised Code on parol or extrinsic evidence, negation or limitation is inoperative to the extent that such construction is unreasonable.''

to fail of its essential purpose" within the meaning of R. C. 1302.93(B),[5] and cannot be deemed the exclusive remedy. Comment 1, R. C. 1302.26.[6]

It cannot be presumed that a buyer will voluntarily and knowingly agree to pay a full and adequate consideration for a pseudo-obligation. R. C. 1302.26, comment 4; cf. *Moore* v. *Schlossman's Inc.* (1957), 5 Misc. 2d 693, 161 N. Y. S. 2d 213; cf. *Cox Motor Car Co.* v. *Castle* (Ky. 1966), 402 S. W. 2d 429; cf. *Rose* v. *Chrysler Motors Corp.* (1963), 212 C. A. 2d 755, 28 Cal. Rptr. 185.

The Uniform Commercial Code makes provision for transactions in sales which are permitted to be devoid of implied warranties, in R. C. 1302.29,[7] by expression of such terms as "as is." Such terms are sufficiently clear to apprise the buyer of the nature of the agreement (R. C. 1302.-93, comment 1).[8] Furthermore, the requirement of good

[5]See footnote 3.

[6]Comment 1, R. C. 1302.26, states:

"1. 'Express' warranties rest on 'dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms. 'Implied' warranties rest so clearly on a common factual situation or set of conditions that no particular language or action is necessary to evidence them and they will arise in such a situation unless unmistakably negated.

"This section reverts to the older case law insofar as the warranties of description and sample are designated 'express' rather than 'implied.' "

[7]R. C. 1302.29(C) provides:

"Notwithstanding division (B) of this section: (1) unless the circumstances indicate otherwise all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and * * *."

[8]R. C. 1302.93(A)(1) and (2) provides:

"(A) Subject to the provisions of divisions (B) and (C) of this section and of section 1302.92 of the Revised Code on liquidation and limitation of damages:

"(1) the agreement may provide for remedies in addition to or in substitution for those provided in sections 1302.01 to 1302.98, inclusive, of the Revised Code and may limit or alter the measure of damages recoverable under such sections, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair

faith pursuant to R. C. 1301.02 (C)[9] and 1301.09[10] may not be disclaimed by agreement of the parties, and the parties may, by agreement, determine the standards by which the performance of such obligations are to be measured *only* "if such standards are not manifestly unreasonable." R. C. 1301.02(C). This requirement of good faith, pursuant to R. C. 1301.02 (C) and 1301.09, which permeates the Uniform Commercial Code, precludes a conclusion that plain-

and replacement of non-conforming goods or parts; and

"(2) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(B) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code."

Comment 1, R. C. 1302.93 states:

"1. Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.

"However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Chapter they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Chapter in an unconscionable manner is subject to deletion and in that event the remedies made available by this Chapter are applicable as if the stricken clause had never existed. Similarly, under division (B), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Chapter."

See, also, footnote 3.

[9]R. C. 1301.02 (C) provides:

"The effect of provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code may be varied by agreement, except as otherwise provided in these chapters and except that the obligations of good faith, diligence, reasonableness, and care prescribed by these chapters may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligation is to be measured if such standards are not manifestly unreasonable."

[10]R. C. 1301.09 provides:

"Every contract or duty within Chapters 1301., 1302., 1303., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, imposes an obligation of good faith in its performance or enforcement."

tiff intended the warranty statement to be the final expression of the agreement pursuant to R. C. 1302.05."

The fundamental purpose of the warranty provisions of the Uniform Commercial Code is to prevent surprise resulting from unexpected and unbargained for disclaimers of express or implied warranties. Comment 1, R. C. 1302.29."

Therefore, the third, fourth, fifth and sixth assignments of error are not well taken. It is irrelevant that the trial judge considered the liability of Chrysler Motors Corp. also on the theory of negligence and by the application of the doctrine of *res ipsa loquitur*, as criticized by the fifth assignment of error. The liability of the defendant is predicated upon the breach of an implied warranty of merchantability and fitness, and is not dependent upon negligence by the breaching party. The validity of the judgment of the trial court is not dependent upon any finding of negligence of the defendant.

---

[11]R. C. 1302.05 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(A) by course of dealing or usage of trade as provided in section 1301.11 of the Revised Code or by a course of performance as provided in section 1302.11 of the Revised Code; and

"(B) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

[12]R. C. 1302.29, Comment 1, states:

"1. This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise."

See footnote 4.

The seventh assignment of error is as follows:

"When there were no findings to support a conclusion that plaintiff-appellee had or was entitled to revoke his acceptance of the automobile which he had driven 18,000 miles in approximately 2 years, the trial court erred in ordering replacement of the automobile or refund of the purchase price with interest."

This assignment of error is well taken.

The automobile had been driven over 18,000 miles in a two-year period; such created substantial depreciation and a "change in the condition of the goods * * * not caused by their own defects." R. C. 1302.66.[13] Although final acceptance does not occur at any definite point when goods are accepted on condition that the defect will be cured, the plaintiff waited nearly two years before attempting to revoke; this is an unreasonable period of time given the facts in this particular case (See 17 A. L. R. 3d 1103, Section 39 (b)).

It is necessary, therefore, for plaintiff to seek a remedy pursuant to R. C. 1302.88, which provides in part:

"Buyers damages for breach in regard to accepted goods. * * * (B) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. un-

---

[13]R. C. 1302.66(A) and (B) provides:

"Revocation of acceptance in whole or in part.

"(A) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:

"(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

"(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(B) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the sellor of it."

less special circumstances show proximate damages of a different amount.''

In simple terms, plaintiff was entitled to damages limited to the difference of the market value of the 1971 Dodge if it had been as warranted and the value that it actually had by reason of its defects, such values to be determined as of the date and place of its sale. The judgment of the trial court which awards to plaintiff a refund of the entire purchase price or the *replacement* of the automobile exceeded the amount permissible by the standard for determining damages prescribed by R. C. 1302.88 (B).

Therefore, the judgment of the Court of Common Pleas of Lucas County is affirmed insofar as it determines that the defendant is liable to the plaintiff for breach of warranty, and the judgment is reversed as to the award of damages in the form of a refund of the purchase price and alternative relief, and this cause is remanded to the common pleas court for a redetermination of damages only, consistent with this opinion, and for further proceedings according to law.

*Judgment affirmed in part and reversed in part.*

POTTER, P. J., and WILEY, J., concur.