**ALLEN FOOD PRODUCTS, INC., Plaintiff,**

v.

**BLOCK BROTHERS, INC., Defendant.**

**No. C–3–79–33.**

United States District Court, S. D. Ohio, W. D.

Dec. 19, 1980.

Fred M. Izenson, Dayton, Ohio, for plaintiff.

Charles H. Horn, Dayton, Ohio, for defendant.

---

### DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RICE, District Judge.

The captioned cause came to be submitted upon Defendant's motion seeking an Order of the Court entering summary judgment in its favor and against Plaintiff.

This is a diversity action in which Plaintiff predicates Defendant's liability on breach of implied warranties regarding the quality of certain food products which Defendant sold to Plaintiff in September, 1978. Specifically, Plaintiff alleges that approximately $13,000 in black walnuts it had purchased from Defendant for resale were "unwholesome, unacceptable, and unmerchantable," and had been rejected by Plaintiff's customers upon subsequent distribution.

Defendant's Motion for Summary Judgment is not directed to the quality of the products sold to Plaintiff. Rather, Defendant says that Plaintiff is barred from seeking remedy for the alleged breach of implied warranties because Plaintiff failed to give Defendant *timely notice* of such breach after acceptance of the goods.

Implied warranties in connection with the sale of goods are governed by the Uniform Commercial Code as adopted by the Ohio legislature, O.R.C. §§ 1302.27–1302.28 (UCC 2–314, 2–315). Where the seller has breached said warranties, the buyer may maintain an action thereon after accepting the goods, O.R.C. § 1302.88 (UCC 2–714). However, O.R.C. § 1302.65(C)(1) (UCC 2–607(3)(a)) further provides:

Where a tender has been accepted: (1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . .

Defendant contends that the alleged poor quality of the goods in this case should have been discovered by Plaintiff upon inspection shortly after delivery, on or about September 7, 1978. Because black walnuts are a perishable commodity, Defendant maintains that a delay in notification of breach after delivery of at least three months, until December 18, 1978 (when Plaintiff's president first contacted Defendant's sales agent), or of as much as five and one-half months, until February 21, 1979 (when Defendant was actually informed of the problems by its sales agent), must be considered unreasonable as a matter of law.

The affidavit of Plaintiff's president submitted in opposition to Defendant's motion does not directly dispute the particulars of Defendant's contention, but sets forth the following additional considerations:

(1) In the course of Plaintiff's prior dealings with Defendant, notice given either to Defendant's agent or to Defendant directly regarding nonconforming goods has been effective in securing replacement or credit by Defendant irrespective of the lapse of time between delivery of the goods and such notice.

(2) While black walnuts are perishable (six to nine month shelf-life), their usable life may be indefinitely extended by cold storage. Plaintiff maintains cold storage facilities and employed same with respect to the goods in question.

(3) The goods in question were of satisfactory appearance upon delivery and their unwholesomeness or inedibility could only be discovered by consumption. Industry custom and usage does not require consumption inspection upon delivery unless food products are visually defective.

(4) Because of the extended chain of distribution upon Plaintiff's resale of food products (i. e., cold storage period, to in-

termediate distributor, to retailer, to consumer), it is not abnormal for several weeks or months to pass between Plaintiff's receipt of a satisfactorily appearing product from a supplier and Plaintiff's awareness of the product's inedibility through voluminous consumer complaints. Because the goods in question were purchased by Plaintiff for Christmas resale, Plaintiff did not become aware of the magnitude of their nonconformance through customer complaints until late December, 1978.

(5) Plaintiff attempted to report sporadic complaints from its customers to Defendant at earlier dates, but Defendant took no action thereon. (Contrary to Defendant's contention, interrogatories attached to Defendant's motion indicate that Plaintiff's purchasing agent contacted Defendant's sales agent about the matter as early as October, 1978).

O.R.C. § 1301.10(B)(UCC 1–204) provides: What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action.

■ Because of the "all circumstances" inquiry that is necessarily involved, the timeliness of notice under O.R.C. § 1302.-65(C)(1), and under its counterpart at UCC 2–607(3)(a) as adopted in other jurisdictions, is ordinarily a question for the trier of fact. *See, e. g., Eastern Air Lines, Inc. v. McDonnell Douglas Corporation*, 532 F.2d 957, 973 (5th Cir. 1976) (applying California law); cf. *Standard Alliance Industries, Inc. v. Black Clawson Company*, 587 F.2d 813, 823 (6th Cir. 1978) (adequacy of notice under O.R.C. § 1302.65(C)(1)); *Pritchard v. Liggett & Myers Tobacco Company*, 295 F.2d 292, 298 (3d Cir. 1961) (applying timeliness provision under prior Uniform Sales Act in Pennsylvania).

■ But as Defendant points out, where the facts are undisputed, a delay in notice may be determined to be unreasonable as a matter of law. In particular, where perishable goods are involved, delays in notice much less than the minimum delay calculable in the present case (i. e., the three weeks from delivery to the first contact in Octo-

ber, 1978) have been held unreasonable as a matter of law and have thereby barred the buyer from any remedy for breach of warranty as to such goods. *See generally* White & Summers, *Uniform Commercial Code* § 11–10 at 422 & n.88 (2d ed. 1980) (citing *A. C. Carpenter, Inc. v. Boyer Potato Chips*, 7 UCCRS 493 (1969) (twelve day delay after delivery of potatoes is unreasonable), and citing *Mazur Brothers v. Jaffe Fish Co., Inc.*, 3 UCCRS 419 (1965) (five day delay after delivery of shrimp)).

Nonetheless, the Court concludes that the considerations raised by Plaintiff's opposition to Defendant's motion, herein, preclude a determination that Plaintiff's notice was untimely as a matter of law. Specifically, the Court finds that the following nonexclusive issues of fact exist which are material to an assessment of the reasonableness or unreasonableness of the time within which Plaintiff gave Defendant notice of breach:

(1) It remains unclear when notice of breach, adequate under O.R.C. § 1302.-65(C)(1), was first given. The parties appear to be in agreement that "formal" notice by Plaintiff's president was attempted no earlier than mid-December, 1978. However, a buyer's notice under O.R.C. § 1302.65(C)(1) need not be formal or detailed, but need only be such as apprises the seller of a problem with the transaction so that the way to settlement or adjustment may be opened for negotiation. *Eckstein v. Cummins*, 41 Ohio App.2d 1, 321 N.E.2d 897, 901 (Lucas Cty. 1974). The alleged contact of Defendant's sales agent by Plaintiff's purchasing agent in October, 1978, may or may not suffice in this regard.

(2) It remains uncertain when the period for timely notice from Plaintiff to Defendant commenced, or, in the statute's terms, when Plaintiff "should have discovered" Defendant's alleged breach of warranty with respect to the delivered goods. Defendant says Plaintiff "should have discovered" the breach by inspection upon delivery. However, in construing O.R.C. § 1302.65(C)(1), the Ohio Court of Appeals for Logan County has said:

The phrase "should have discovered," is not equivalent to "could have discovered," does not necessarily carry with it a duty to seek out the condition to which the discovery pertains, but it connotes, instead, that if the condition is so obvious as to be apparent in the normal exercise of the perceptory senses then that condition may not be considered overlooked or not observed.

*Slemmons v. CIBA–GEIGY Corporation*, 57 Ohio App.2d 43, 385 N.E.2d 298, 304 (Logan Cty. 1978). Thus, if, as Plaintiff says, Defendant's breach was not discoverable except by taste inspection, and if taste inspection is not normal in the industry unless food products appear unsatisfactory, then it is possible that Plaintiff "should *not* have discovered" the alleged breach until Plaintiff actually did discover same after consumer complaints. (3) Finally, the degree of perishability of the goods in question under all the circumstances of this case remains in question. Perishability is, of course, a characteristic circumstance in cases where the reasonable time for notice has been considered quite short as a matter of law, in order that the seller might minimize the buyer's loss through spoilage and his own (i. e., the seller's) liability. *See* White & Summers, *supra*, § 11–10 at 421–22. But it follows that the extent to which the time for reasonable notice is to be shortened in a given case must be considered a function of the degree of perishability of specific goods under the precise circumstances of such case. Thus, if, as Plaintiff says, the goods involved herein (which are, nominally, perishable) would last "indefinitely" under the conditions in which Plaintiff stored them, and would last six to nine months after their distribution to Plaintiff's customers, then notice of breach given within five and one-half months after delivery to Plaintiff (i. e., the longest period alleged by Defendant) would not adversely affect Defendant's ability to minimize Plaintiff's loss through spoilage or to minimize Defendant's own liability, and, therefore, such delay in notice would not necessarily be unreasonable as a matter of law.

For the aforestated reasons, this Court finds that there exist genuine issues of fact material to the determination of whether Plaintiff did or did not notify Defendant of the alleged breach of warranty within a "reasonable time," pursuant to O.R.C. § 1302.65(C)(1), and, accordingly, if not, whether Plaintiff should thereby "be barred from any remedy." Therefore, Defendant's motion seeking an Order of the Court entering summary judgment in its favor on such grounds is not well taken and same is, therefore, overruled.

Upon the express request of Plaintiff's counsel and for good cause shown (Plaintiff's counsel being hospitalized for surgery), trial on the merits of the captioned cause, heretofore set for the week of January 5, 1981, is hereby ordered reset for the week of June 15, 1981. Said trial will be before the Court sitting as the trier of fact.

The Final Pretrial Conference in the captioned cause, heretofore set for Tuesday, December 23, 1980, is hereby ordered reset for 4:30 p. m. on Monday, June 1, 1981. This pretrial conference will be had by way of telephone conference call. The attorneys listed below need not appear in chambers for such pretrial but need only wait by their telephone at the appointed time.

Jointly prepared Final Pretrial Order is to be filed by 4:30 p. m. on Friday, May 29, 1981.

The parties are ordered to "cut off" discovery thirty days in advance of the trial date, to wit: May 2, 1981. This "cut off" date is inflexible and can only be modified by agreement of counsel or by the Court, upon a filing of a motion showing good cause. For purposes of this pretrial order, the term "discovery" includes any depositions taken for perpetuation of testimony purposes and sought to be used at trial.

Date to reveal identity of all witnesses, together with a brief synopsis of their testimony: March 15, 1981.

Leave of court granted to file whatever motions not directed to pleadings deemed necessary (including motions for summary judgment) not later than: March 15, 1981.