STATE, Respondent v. NESS et al., Appellants

(65 N. W.2d 923)

(File No. 9388. Opinion filed September 17, 1954)
Rehearing denied February 3, 1955

Ralph A. Dunham, Atty. Gen., Benj. D. Mintener, Asst. Atty. Gen., Samuel W. Masten, States Atty., Canton, for Respondent.

Henry C. Mundt, Acie W. Matthews, Sioux Falls, for Appellants.

ROBERTS, J.   The defendants were tried in the municipal court of Canton on a complaint charging them with assault and battery upon the person of Godfrey Krutch and found guilty.   Reversal of the judgment is sought on the grounds (1) that the judgment is void in that the municipal court of the City of Canton was not legally established; (2) that the evidence adduced was insufficient to warrant submission to the jury; (3) that the court erred in restricting cross-examination by counsel for defendants; (4) that misconduct of the State's Attorney caused prejudice against defendants; and (5) that the court did not instruct the jury with reference to demonstrations on the part of attendants at the trial.

SDC 32.0702 authorizes the establishment of a municipal court in "Any city in this state having a population of five thousand or over, or any city which is a county seat, having a population of one thousand five hundred or over".   The City of Canton, a county seat having a population of less than five thousand, established under and pursuant to the terms of this statute a municipal court .   Section 1, Article V, of the constitution provides that the judicial powers of the state except as in the constitution otherwise provided shall be vested in the supreme court, circuit courts, county courts and justices of the peace, and such other courts as may be created by law for cities and towns. Section 23, Article V, provides in part:   "In cities having a population of five thousand or over the legislature may provide, in lieu of police magistrates, for municipal courts, the judges whereof shall be chosen in such manner as the legislature shall prescribe".   Appellants challenge the constitutionality of the statute and the legal existence of the municipal court upon the ground that the legislature was without power to authorize the establishment of a municipal court in a city not having the population required by the constitution.

■ The rule that the acts of a de facto court or judge cannot be attacked collaterally has been invoked by counsel for the respondent.

■ This court in Merchants' Nat. Bank v. McKinney, 2 S.D. 106, 48 N.W. 841, 845, adopted the definition of a de facto officer laid down in State v. Carroll, 38 Conn. 449, 9 Am.Rep. 409: " 'An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office are exercised—First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be. Second. Under color of a known or valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like. Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public. Fourth. Under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.' " The de facto doctrine is grounded upon policy and convenience. It is for the protection of persons who deal with those who apparently are officers in fact. It would be contrary to the interests of the public to permit the acts of a de facto officer to be collaterally impeached. As pointed out by the court in Burt v. Winona & St. P. R. Co., 31 Minn. 472, 18 N. W. 285, 287, 289: "It would be a matter of almost intolerable inconvenience, and be productive of many injustices, of individual hardship and injustice, if third persons, whose interests or necessities require them to rely upon the acts of the occupants of public offices, should be required to ascertain at their peril the legal right to the offices which such occupants are permitted by the state to occupy."

■ ■ There can be no de facto incumbent of an office

not existing by virtue of a statute or ordinance. This conclusion applies where an act creating an office has been held unconstitutional or has been repealed. According to the weight of authority, however, a legislative act although unconstitutional may give such potential existence to an office as to make its incumbent a de facto officer. 14 Am.Jur., Courts, § 10. In Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 1125, 30 L.Ed. 178, leading case upholding a contrary view, the court said: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." That case was cited with approval by this court in Merchants' Nat. Bank v. McKinney, supra, wherein the existence of de jure offices appear. Whether the scope of the de facto doctrine is limited to de jure offices was not there involved.

In Wendt v. Berry, 154 Ky. 586 ,157 S.W. 1115, 1119, 45 L.R.A.,N.S., 1101,Ann.Cas.1915C, 493, the court in holding that the acts of public officers exercising authority under a statute until it was declared unconstitutional were binding said: "Acts of the Legislature are presumed to be valid until declared void by the courts. The people generally and rightfully so regard them. The power and authority of public officers who exercise the duties of office under legislative enactments is recognized by all persons with whom they have dealings in their official capacity, and the public good imperatively demands that validity should be given to the acts of these officers when they are performing duties within the scope of their public authority. If individuals dealing with public officers might in every instance question their authority or deny their right to exercise the office until the courts of last resort had given the sanction of their approval to the validity of the legislation under which the office was established, the conduct of public affairs would be involved in interminable confusion and doubt. No person would feel secure either in his personal or his private rights. Confusion and uncertainty would attend every official act that was performed. Such a condition as this would be disastrous to the peace and welfare of society."

378

In Marckel Co. v. Zitzow, 218 Minn. 305, 15 N.W.2d 777, 779, the court had under consideration the validity of proceedings conducted in a municipal court established by a statute apparently valid but subsequently declared unconstitutional. The court after reviewing its prior decisions and a number of authorities in other states concluded that proceedings conducted by the municipal court prior to the time that the statute creating it was declared unconstitutional were valid. The court said: "Important official acts were actually performed by the judge of the court created under a statute apparently regularly enacted by the branch of the government to which the power to make laws has been delegated by the constitution. The acts of the incumbent were as potent, as far as the public is concerned, as were the acts of any de jure officer performing a duty of a legally existing office. The public, in its organized capacity, as well as private citizens, has acquiesced in and submitted to its authority. Under those circumstances, it appears to us that to suggest that, because there cannot be a de facto court without a de jure court, all such acts are invalid is too hypercritical a refinement and one which should have no support in law or reason."

See also annotation in 99 A.L.R. 294.

■ The question whether the statute authorizing the establishment of a municipal court in the City of Canton is unconstitutional cannot be decided in this action. The court and judge exercised power under color of authoritiy and there was at least a de facto court. Its acts are not open to collateral attack.

■ Appellants urge that there is no evidence whatever to connect them with the commission of a crime. They insist the record justified the conclusion that Godfrey Krutch was injured when he lost his balance and fell or in some other way than being struck by the appellants. It appears from the record that Godfrey Krutch and his son Lorrane were employed by the Flora Engineering Company. On the evening of October 31, 1952, they were assigned the duty of guarding trucks and other equipment of their employer near the town of Worthing. Lorrane left his father about ten o'clock that evening and while in a barroom in Worthing al-

tercations took place between him and one Andy Fodness and appellant Lloyd Ness. Shortly after eleven o'clock Lorrane rejoined his father. There is no substantial dispute up to this point in the evidence between the testimony of the State and that of the appellants. Since the parties are not in accord as to the import of testimony regarding subsequent events we detail certain phases of the testimony. The following pertinent excerpts are from the testimony of Godfrey Krutch: "Well, Lorrane came back there first and shortly after that a crowd came down there. Lloyd Ness said it wasn't a fair fight they had uptown. He was talking mostly to Lorrane at the time. They had a fight. They then shook hands and the crowd went back uptown. Well, it wasn't too long ,I'd say probably ten or fifteen minutes, they come back down again and the crowd was bigger than the first time. These three boys sitting here at the table were at the front of the crowd. They said they came down to get Lorrane and they wasn't kidding. I was hit with a club. Howard Ness had the club. So I started to run. I turned around to see whether they were really coming after me and this man (Howard Ness) was right behind me, real close, and that's the last thing I can remember. I was hit while running." An eyewitness to the fracas testified: "I saw Godfrey Krutch on the ground. Dale Ness was standing by him, for one. I saw him kick this old man in the head." Appellants denied that they assaulted Godfrey Krutch. The evidence was sufficient to justify the jury in finding as it did that the offense of assault and battery was commited as charged in the complaint.

■ ■ We have made examination of errors assigned with respect to the rulings of the court in restricting cross-examination of state witnesses. It is claimed that the questions propounded went to their credibility. The trial court has discretionary powers over cross-examinations which will not be disturbed on appeal unless there was an abuse of discretion. State v. Rasmusson, 72 S.D. 400, 34 N.W.2d 923. We cannot find that there was such abuse in the refusal of the court to permit cross-examination of Godfrey Krutch and one Sidney Peterson concerning the disposition and sobriety of Lorrane Krutch.

■ Appellants charge instances of misconduct by the

state's attorney. These assignments of error deal with remarks made by the state's attorney during colloquies between counsel respecting the admissibility of testimony and the asking of questions which appellants assert were irrelevant and had the effect of producing a verdict based on passion and prejudice. If it be conceded that some of the side remarks of the state's attorney were improper, we are satisfied from an examination of the record that they were not sufficiently prejudicial to require a new trial. In some instances the remarks of the state's attorney were invited by counsel for appellants of which they cannot complain. Objections to the questions asked by the state's attorney and referred to in these assignments were sustained by the court and were not of such character as to require reversal notwithstanding the favorable rulings.

■■ ■■ Appellants next contend that they were deprived of a fair trial because of the presence and conduct of the large number of spectators during the trial as described in the affidavits supporting motion for new trial. It is stated in the affidavits that there was upon a number of occasions during the trial applause which the trial court did not suppress and the opinion is expressed by affiants that the verdict of the jury was influenced by the misconduct of the audience. The affidavit of the state's attorney is to the effect that the alleged indecorum of the audience is grossly exaggerated in the affidavits supporting motion for new trial and that on the two occasions when there was laughter on the part of the spectators the court admonished them to maintain order. The constitution requires that an accused shall be given a public trial. The judge presiding at the trial has ample authority to enforce decorum in the courtroom and it is the duty of the court to exercise this power. Daudel v. Wolf, 30 S.D. 409, 138 N.W. 814; Larsen v. Johnson, 43 S.D. 223, 178 N.W. 876. The accused did not claim during the progress of the trial that the conduct of the audience was in any manner interfering with or preventing them from having a fair and impartial trial. The showing on motion for new trial was conflicting. The trial court was of the opinion that the jury was not influenced in its verdict finding defendants guilty by the conduct of the audience during

the trial. The decision of the trial court on the conflicting affidavits is entitled to great weight and will not be reversed by this court unless such decision was clearly against the evidence. We find no prejudicial error in the record.

Judgment is affirmed.

All the Judges concur.