Ted C. FREDRICK and Wanda Fay Fredrick, Plaintiffs and Respondents,

v.

Cecil DREYER, d/b/a Dreyer Trailer Sales, Defendant, Third-party Plaintiff and Appellant,

v.

FALCON COACH COMPANY, INC., Third-party Defendant.

No. 11895.

Supreme Court of South Dakota.

Argued March 25, 1977.

Decided Sept. 23, 1977.

Wally Eklund of Johnson, Johnson & Eklund, Gregory, for plaintiffs and respondents.

John J. Simpson, Winner, for third-party plaintiff and appellant.

DUNN, Chief Justice.

This is an action for breach of warranty in the purchase of a 1972 Falcon Motor Home. In addition to his answer, defendant Dreyer filed a third-party complaint against Falcon Coach Company which alleged that any warranty on the trailer was the sole responsibility of Falcon. Falcon attempted to quash service for lack of jurisdiction and later instituted bankruptcy proceedings. The trial judge found Falcon in default and removed it from trial of the issues before the jury.

A jury trial of the matter was held in the Sixth Judicial Circuit Court, and the jury awarded the plaintiffs $8,100 in damages. Judgment was entered on March 1, 1976. The defendant's motions for a new trial and for judgment n. o. v. were denied by the court's order of March 30, 1976. The defendant appeals the judgment and order.

We affirm the jury verdict as to liability, but reverse and remand for a new trial on the issue of damages.

In October of 1972, plaintiffs, Mr. and Mrs. Fredrick, sought to hire the defendant Dreyer, a mobile home dealer, to move their mobile home to Nebraska from South Dakota. After defendant advised them that he could not tow any trailers other than his own, the parties discussed a possible sale. Later in October, they agreed to a possible sale. Dreyer was to deliver the trailer to O'Neill, Nebraska, and "set it up." The Fredricks traded their old trailer, which was valued at $3,400, and financed the balance of $8,100 through the Ranchers National Bank of Winner.

The trailer was delivered in early December 1972, and service was hooked up. Problems immediately arose, the chief one being water leaks, which plaintiffs' witnesses stated caused carpet and flooring rot and mildew, insulation sag and deterioration, an unpleasant odor, underbelly sag, and rust of the heat ducts. There was also testimony as to the frame being bent, resulting in the doors not latching, and as to improper wiring, necessitating the constant burning of kitchen lights to keep the refrigerator operating. Dreyer and the bank loan officer testified that there was much less damage than plaintiffs claimed. Defendant admitted that he had done nothing to repair the problems, but he did state that he told plaintiffs to call a plumber and send him the bill. This was contradicted by plaintiffs. The Fredricks made two payments on the trailer and then stopped making them because of the problems they had encountered.

Before trial, the court found Falcon in default and excluded it from the trial before the jury. It also denied the defendant's motion to amend his answer on the day of trial to include a defense of contributory negligence. These rulings, along with others, are claimed as error by the defendant.

■ We will first decide whether there was sufficient evidence to support the jury's conclusion that a warranty was breached. SDCL 57–4–30 states that "[u]nless excluded or modified, * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." It is undisputed that Dreyer was a "merchant" of mobile homes. SDCL 57–2–7. To be merchantable, goods must be at least such as are "fit for ordinary purposes for which such goods are used * * *." SDCL 57–4–31(3).

In addition to various other problems, plaintiffs introduced evidence that none of the doors would latch, that the frame was crooked, that the wiring was hooked up incorrectly, and that the plumbing did not work properly. We hold that this evidence was sufficient to justify the jury's decision that an implied warranty had been breached.

■ Defendant contends that a seller does not impliedly warrant against latent defects. There is nothing in the Uniform Commercial Code to support that proposition. As the United States Court of Appeals for the Third Circuit stated:

"The entire purpose behind the implied warranty sections of the Code is to hold the seller responsible when inferior goods are passed along to the unsuspecting buyer. What the Code requires is not evidence that the defects should or could have been uncovered by the seller but only that the goods upon delivery were not of a merchantable quality or fit for their particular purpose. If those requisite proofs are established the only exculpatory relief afforded by the Code is a showing that the implied warranties were modified or excluded by specific language under Section 2–316. * * * The gravamen here is not so much with what precautions were taken by the seller but rather with the quality of the goods contracted for by the buyer." *Vlases v. Montgomery Ward & Company,* 1967, 377 F.2d 846, 850.

■ The defendant next raises as a point of error the ruling of the trial court that Falcon, the third-party defendant, be re-

moved from the trial of the issues before the jury. SDCL 15–6–20(b) allows a court to "order separate trials or make other orders to prevent delay or prejudice." In discussing Federal Rule 20(b), Wright & Miller, Federal Practice and Procedure: Civil § 1660 states in part:

"Rule 20(b) furthers this policy by giving the court authority to order separate trials or make any other order to prevent a party from being * * * delayed * * * or put to unnecessary expense by the joinder of a party against whom he asserts no claim and who asserts no claim against him."

The Fredricks asserted no claim against Falcon, and it was within the trial court's discretion to remove Falcon from the trial before the jury to prevent delay. *Davison County v. Watertown Tile and Construction Co.,* 1925, 48 S.D. 24, 201 N.W. 1005; *Garber v. Randell,* 1973, 2 Cir., 477 F.2d 711. We find no abuse of discretion here.

■ The next allegation of error involves alleged misconduct of the plaintiffs' attorney, which defendant urges should have resulted in a mistrial being granted by the trial court. The incidents involve cross-examination of a witness and comments made in final argument.

The circumstances surrounding the first incident involved the testimony of Mr. Shoemaker, the loan officer for the bank which financed the mobile home purchase. He was called by defendant to testify as to the market value of the home and also as to the difficult time he had finding plaintiffs to collect his payments and, finally, to repossess the mobile home. On cross-examination, the attorney for plaintiffs asked whether Shoemaker had discussed return of the trailer with the Fredricks or their attorney, at which point both counsel engaged in a heated discussion in front of the jury. It appears that both attorneys were arguing about the settlement and return of the trailer prior to trial. The judge admonished the attorneys and instructed the jury to "completely disregard" the discussion.

■ It is well settled in this state that the scope and extent of cross-examination rests in the sound discretion of the trial court. *Johnson v. Chicago & N. W. R. Co.,* 1949, 72 S.D. 580, 38 N.W.2d 348; *State v. Ness,* 1954, 75 S.D. 373, 65 N.W.2d 923. See also 98 C.J.S. Witnesses § 317. This court stated in *Plank v. Heirigs,* 1968, 83 S.D. 173, 179, 156 N.W.2d 193, 197, that "[t]he extent to which a witness may be cross-examined as to facts which are otherwise immaterial for the purpose of testing his reliability and to show bias and prejudice is ordinarily within the discretion of the trial court and much latitude is to be allowed in this line * * * *."

■ Since it is the policy of the courts to encourage settlement, it is normally error to allow discussion of the settlement negotiations in front of the jury. Annot., 99 A.L.R.2d 737. It is generally held, however, that such error can be cured by proper instruction to the jury. See cases cited Annot., 99 A.L.R.2d at 741–743. Although we by no means condone the intemperate actions of both attorneys, we feel that the matter was properly handled by the trial court and that any prejudice was cured by the admonition and instruction to the jury.

■ Defendant also alleges misconduct by plaintiffs' attorney in his closing argument. In addition to commenting on the ability of the defendant to pick up the trailer, discussed above, error is also alleged from his statements that the bank held a note on the trailer and that Dreyer could get indemnity from Falcon. The challenged statements were made in the rebuttal argument after defendant's attorney had made his closing argument, which included the following statements:

"Mr. Dreyer didn't install this electrical system and this plumbing system. Falcon Coach Company did. * * *

"It looks to me like Mr. and Mrs. Fredrick are trying to get a trailer house without paying for it. * * *

"If you would give them the damages for this lawsuit, they keep the trailer and the damages. So that's where that stands."

It is the general rule that a party whose counsel pursues improper argument and invites a reply is estopped to complain of the reply argument. 88 C.J.S. Trial § 194, citing *Binegar v. Day*, 1963, 80 S.D. 141, 120 N.W.2d 521. Even if the defendant correctly contends that plaintiffs' attorney was engaged in improper argument, which we need not decide, the defendant's attorney made similar arguments, and defendant is estopped from raising error as to issues which were provoked by his own counsel's statements. *Hinman v. Gould*, 1939, 205 Minn. 377, 286 N.W. 364. As this court pointed out in *Binegar*, supra, the granting of a new trial should not be used to discipline counsel, and an appellate court should interfere with a trial court's efforts at regulation of the conduct of counsel only when it is convinced that there has been a miscarriage of justice. We are not so convinced in this case.

█ Defendant next points to the trial court's denial of his motion to amend his answer as error. The motion was made the morning of the trial to add a defense of contributory negligence. It was denied for lack of timeliness and because the court felt that contributory negligence was not a defense to a breach of warranty action.

The question of whether to allow amendment at such a late date—almost two years after the general denial of Dreyer was served—is in the discretion of the trial court. *O'Neill v. Jones*, 1909, 24 S.D. 79, 123 N.W. 495; *Simmons v. Leighton*, 1932, 60 S.D. 524, 244 N.W. 883. We find no abuse here. Since many courts have ruled that contributory negligence is not a defense to breach of warranty actions (*Young v. Aeroil Products Company*, 1957, 9 Cir., 248 F.2d 185; *Hansen v. Firestone Tire and Rubber Company*, 1960, 276 F.2d 254; *Dagley v. Armstrong Rubber Company*, 1965, 7 Cir., 344 F.2d 245), and since an instruction as to the buyers' duty to minimize damages was given, it is difficult to see how the defendant was prejudiced.

It is our opinion, therefore, that the jury verdict as to the existence of a breach of warranty was supported by the evidence

and that the points of error raised by defendant are not such as would merit the granting of a new trial on the issue of liability. We affirm as to the finding of a breach of warranty.

█ Finally, we are asked to rule that the award of damages should be reversed because of an inadequate basis upon which they could be determined. This court has set out the following rule as to damages:

> "While the nature of the case may not permit estimating damages with certainty, it is the rule in this state that the matter of measuring damages may not be left to mere speculation on the part of the jury. Facts must exist and be shown by the evidence which afford a basis for measuring the loss of the plaintiff with reasonable certainty." *Kressly v. Theberge*, 1961, 79 S.D. 386, 389, 112 N.W.2d 232, 233.

See also, *Peter Kiewit Sons' Co. v. Summit Construction Co.*, 1969, 8 Cir., 422 F.2d 242; *Swenson v. Chevron Chemical Company*, 1975, S.D., 234 N.W.2d 38.

SDCL 57-8-37 (UCC 2-714(2)) states that the "measure of damages for breach of warranty is the difference * * * between the value of the goods accepted and the value they would have had if they had been as warranted * * *." Fair market value is the usual standard upon which testimony as to damages in such cases is based. *Eckstein v. Cummins*, 1974, 41 Ohio App.2d 1, 321 N.E.2d 897; *Mobile Housing, Inc. v. Moss*, 1972, Tex.Civ.App., 483 S.W.2d 56; *Processsteel, Inc. v. Mosely Machinery Company*, 1970, 6 Cir., 421 F.2d 1074.

The plaintiffs put on two witnesses to show the value of the mobile home as accepted. The first witness was a Nebraska mobile home dealer who gave an estimate as to cost of repair, and then stated that he would pay $6,000 for it wholesale; however, he replied on cross-examination that he had given no opinion as to what the fair market value would be if the home were offered for sale to the general public. He stated he would expect to make a profit on it if he bought it for $6,000 and resold it to the

general public, but he gave no testimony as to his expected profit or the retail sale price he would put on it.

The only other witness giving value testimony was Ted Fredrick, one of the plaintiffs, who first said the mobile home was not worth anything to him in its present condition, but who then testified as follows:

"Q  Is it your testimony you value the one you bought, knowing the condition it was in, at somewhat the same value as your other trailer home?

"A  I wouldn't trade even up for it.

"Q  Do I understand that you value the trailer that we're talking about here somewhere in the neighborhood of $3500?

"A  Probably somewhere in there."

On cross-examination, Fredrick testified as follows:

"Q  You don't know the market value?

"A  I'm not in the business.

"Q  You don't have any idea what the market value is?

"A  I testified to that.  I don't know.

"Q  Earlier, when I asked you that question on a deposition, you said you didn't have any idea?

"A  That's what I still say.

"Q  As to market value, still don't have any idea?

"A  No, I agree to that.  I don't know."

Ordinarily, the owner is permitted to state the fair market value of his property and this evidence can be considered by the jury in arriving at its verdict. *Hannahs v. Noah,* 1968, 83 S.D. 296, 158 N.W.2d 678; *Burke v. Thomas Chevrolet,* 1975, S.D., 227 N.W.2d 31. However, the plaintiff in this case stated unequivocally that he did not know the fair market value. His backhanded estimate on value, quoted above, was at best a statement of what the trailer was worth to him.  The wholesale price of $6,000 testified to by the Nebraska trailer dealer was not supplemented by any evidence of expected profits on a retail sale, and he refused to give an opinion as to fair market value.

The jury apparently accepted Fredrick's valuation of $3,500 instead of the higher figure of $6,000 wholesale.  While we do not hold that plaintiffs were bound by the higher figure given by one of their experts (*City of Cedarburg Light & Water v. Allis-Chalmers,* 1967, 33 Wis.2d 560, 148 N.W.2d 13), we do hold that the figures given by both witnesses were too speculative to form a foundation upon which to base an award of damages.

Thus, we affirm as to liability, and reverse and remand for trial on the issue of damages.

ZASTROW and PORTER, JJ., concur.

WOLLMAN, J., concurs specially.

MORGAN, J., concurs in the affirmance in part and in the result of the reversal in part.

WOLLMAN, Justice (concurring specially).

Because Instructions 10 and 14 permitted defendant to argue the substance of his contributory negligence defense theory, I agree that defendant was not prejudiced by the trial court's refusal to permit defendant to amend his answer.  I would not want to intimate that contributory negligence may not be a defense in breach of warranty actions, however, since the contributory misconduct of a plaintiff apparently is a defense in such actions, whether expressly recognized as such or not.  See White & Summers, Handbook of the Law Under the Uniform Commercial Code § 11–7, pp. 335–339.