STATE of South Dakota, Plaintiff
and Appellant,

v.

Keith D. SMEJKAL, Defendant
and Appellee.

No. 15266.

Supreme Court of South Dakota.

Argued Sept. 16, 1986.

Decided Nov. 5, 1986.

tion to suppress evidence obtained with a search warrant. We reverse.

On May 11, 1984, law enforcement officers conducted a search of the Keith Smejkal (Smejkal) farm and discovered a large quantity of marijuana. Indictments were brought against Smejkal for possession of more than ten pounds of marijuana and distribution of more than one-half pound of marijuana. SDCL 22-42-6, 22-42-7.

The trial court granted Smejkal's motion to suppress the evidence by finding the search warrant used was not issued by an appointed magistrate, which made the warrant void from the beginning. The warrant was issued by Debbie Pfeffer (Pfeffer) as a reputed non-law trained magistrate. However, Pfeffer had not yet been appointed by the presiding circuit court judge and no certification of appointment had been made to the South Dakota Supreme Court. SDCL 16-12A-4; SDCL 16-12A-7.1.

The State concedes Pfeffer had not been appointed nor certified as a magistrate, but claims she was a "de facto magistrate," and therefore the search warrant was valid. We hold Pfeffer was a "de facto" judicial officer, and the search warrant she issued was valid.

A magistrate court is established in each judicial circuit in South Dakota. SDCL 16-12A-2. Subject to rules promulgated by the Supreme Court, the presiding judge in each judicial circuit appoints as many magistrates as are deemed necessary to provide adequate and qualified judicial personnel for each county and municipality in the circuit. SDCL 16-12A-3. A duly appointed clerk or deputy clerk who meets the qualifications of a magistrate may also be appointed and act as a magistrate. SDCL 12-12A-5.

Leona Mead (Mead) was clerk of courts for Charles Mix County from January 1, 1976, to May 18, 1984. Pfeffer served under Mead as deputy clerk of courts from May 1, 1976, to May 18, 1984. While deputy clerk of courts, Pfeffer was required to assume the duties of clerk of courts in Mead's absence. Mead was a duly appoint-

Dennis R. Holmes, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Sidney B. Strange, Sioux Falls, for defendant and appellee.

WUEST, Chief Justice.

This is an appeal by the State of South Dakota from an intermediate order of the trial court which granted defendant's mo-

ed lay magistrate for Charles Mix County and in her absence, Pfeffer served as a lay magistrate. Mead's absence occurred more frequently as recurring health problems appeared, especially later in her term. Mead resigned for health reasons on May 18, 1984, and Pfeffer was appointed as the new clerk of courts and received her appointment as magistrate. Her appointment was, however, one week after the search warrant in this case was issued.

A magistrate may not take office for the first time as a magistrate until he or she has attended an institute on the duties and functioning of the magistrate's office. This training is under the supervision of the Supreme Court and is prerequisite for all magistrates "unless such attendance is waived by the Supreme Court." SDCL 16–12A–8. Pfeffer attended lay magistrate training in October, 1978, and every two years thereafter. Mead and Pfeffer attended this training together. Pfeffer was certified by the Supreme Court as having satisfied all lay magistrate training requirements. These certificates, signed by the Chief Justice, were hung prominently in the Clerk of Courts Office.

Not only was Pfeffer apparently qualified as a magistrate, she also functioned as one. Pfeffer signed arrest warrants and search warrants. She also performed marriage ceremonies. By virtue of such service, she was considered a judicial officer by all third persons having business before her and by judicial officers, law enforcement personnel, and private citizens otherwise involved with her. The parties involved in this case were attentive to these circumstances and Pfeffer's reputation as a magistrate.

During a recess in a circuit court trial, the state's attorney, Gary Conklin (Conklin), asked Circuit Judge Paul Kern whether he would be available later that evening at his home in the event a search warrant was requested in this case. Judge Kern recommended the search warrant be issued instead by Pfeffer, since he believed that at some point he would be called upon as circuit judge to rule on the sufficiency of the affidavit and application for search warrant. It is apparent that Judge Kern believed Pfeffer to be a lay magistrate and relied on her reputation as such.

Conklin believed Pfeffer was a duly qualified lay magistrate because of his conversation with Judge Kern, because he had seen Pfeffer's certificate of lay magistrate training on the wall in the clerk of courts' office for several years, and because he had seen Pfeffer issue arrest warrants and perform marriage ceremonies.

The doctrine of the "de facto officer" has a long history in common law and in this country. In *State v. Carroll*, 38 Conn. 449, 9 Amer.Reports 409 (1871), Chief Justice Butler reviewed extensively the law of English and American cases. Based on this review, he considered the following definition of an officer "de facto" as the most accurate and comprehensive definition under that theory.

An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interest of the public and third persons, where the duties of the office are exercised: first, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known or valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or an appointment by or pursuant to a public unconstitutional

law, before the same is adjudged to be such.

*Carroll,* 9 Am.Rep. at 427.

The United States Supreme Court found this to be a comprehensive and discriminating definition. *Norton v. Shelby County,* 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1885). This definition has been widely accepted by other courts, and many decisions following this definition are collected in Annot., 11A Words & Phrases (1971); 46 Am.Jur.2d, Judges § 243 (1969); 63A Am. Jur.2d, Public Officers and Employees § 579 (1984); 3 McQuillin, Municipal Corporations § 12.102 (3d ed. 1982). North Dakota adopted *Carroll's* four-part definition in *State v. Ely,* 113 N.W. 711, 713 (1907), and we adopted it in *Merchants' Nat. Bank v. McKinney,* 2 S.D. 106, 48 N.W. 841, 845 (1891) and in *State v. Ness,* 75 S.D. 373, 65 N.W.2d 923, 924 (1954).

The de facto principle applies to judicial officers. *Waters v. State ex rel. Schmutzer,* 583 S.W.2d 756 (Tenn.1979). This court accepted the theory of de facto judges in a situation where there was a defective election. *Bergh v. Gibbs,* 57 S.D. 634, 234 N.W. 616 (1931). Given the facts of the present case, attention focuses on situations where the duties of an office are exercised "first, without known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people without inquiry to submit to or invoke his action, supposing him to be the officer he assumed to be." *Carroll, supra.* Such circumstances of Pfeffer's reputation as a lay magistrate were present in this case and led everyone involved in the warrant process to invoke her authority.

■ The rationale for the de facto doctrine is that those who rely on the actions of an apparently qualified officer have a right to assume that she properly occupies her position. 63 Am.Jur.2d, Public Officers and Employees § 590 (1984). In *Carroll, supra,* the court stated:

It should be remembered that amongst the earliest cases there was a distinct class entirely independent of color de-

rived from any known appointment or election, where the law said to the public as a rule of policy: 'If you find a man executing the duties of an office, under such circumstances of continuance, reputation or otherwise, as reasonably authorize the presumption that he is the officer he assumes to be, you may submit to or employ him without taking the trouble to inquire into his title, and the law will hold his acts valid as to you, by holding him to be, so far forth, an officer *de facto.*

9 Am.Rep. at 423–424.

It appears in the cases that the other three "de facto" officer situations are more common than the first. Usually there is some appointment or election made, but some irregularity or defect occurs. Nevertheless, "de facto" cases exist where no appointment or election has occurred.

"[T]o constitute an officer de facto it is not a necessary prerequisite that there shall have been an attempted exercise of competent or prima facie power of appointment or election." *United States v. Royer,* 268 U.S. 394, 45 S.Ct. 519, 69 L.Ed. 1011 (1925). The first de facto officer situation, as landmarked in *Carroll* and adopted by *Royer,* has been applied in cases where no appointment has actually occurred. *Tweed's Case,* 16 Wall. 504, 83 U.S. 504, 21 L.Ed. 389 (1872); *Nofire v. United States,* 164 U.S. 657, 17 S.Ct. 212, 41 L.Ed. 588 (1897); *Town of Markleville v. Markle,* 242 Ind. 322, 179 N.E.2d 279 (1962); *Grooms v. LaVale Zoning Board,* 27 Md.App. 266, 340 A.2d 385 (1975); *People ex rel. Duncan v. Beach,* 294 N.C. 713, 242 S.E.2d 796 (1978). *See,* 63A Am.Jur.2d, Public Officers & Employees § 589 (1984).

■ A de facto officer is one who is surrounded with the insignia of office and seems to act with authority. *Royer, supra.* Their title is not good in law, but they are in fact in the unobstructed position of an office and discharging its duties in full view of the public, in such manner and under such circumstances as not to present the appearance of being an intrud-

er or usurper. *Waite v. Santa Cruz,* 184 U.S. 302, 323, 22 S.Ct. 327, 334, 46 L.Ed. 552, 566 (1902); *Royer, supra; Forwood v. City of Taylor,* 208 S.W.2d 670 (1948). No color of election or appointment is needed to constitute one as an officer de facto. There must be either some color of election or appointment or else an exercise of the office and an acquiescence on the part of the public for a length of time which would afford a strong presumption of at least a colorable election or appointment. *Ex Parte Tracy,* 93 S.W. 538, 542 (Tex.Crim. App.1905); *Butler v. Phillips,* 38 Colo. 378, 88 P.2d 480, 481 (1906).

■ The difference between the basis of the authority by a de jure officer and that of a de facto officer is that one rests on the right and the other on the reputation; a de jure officer has the right or title to the office, while a de facto officer has possession and performs the duties under color of right, without being technically qualified in all points of the law to act. The general rule is that the acts of a de facto officer are valid as to third persons and the public until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected. *Ness,* 75 S.D. at 378, 65 N.W.2d at 926. This principle has been codified in some states under statutes providing that the official acts of persons in possession of a public office and exercising the functions thereof are valid and binding as official acts with regard to all persons interested or affected thereby, regardless of whether the person is lawfully entitled to hold the office and whether the person is lawfully qualified. The practical effect of the rule is that there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned.

In this case, the trial court dismissed the state's de facto judge argument by stating:

The instant case is atypical in regard to de facto judge situations and this court might variously analyze the factors set forth with the exception of one—acqui-escence by the parties. The defendant in a timely manner has refused to acquiesce to Mrs. Pfeffer's attempt to exercise the authority of a committing magistrate. Moreover, nothing in the record or any actions taken by the defendant can be construed or viewed as acquiescence toward the exercise of such authority.... Thus Mrs. Pfeffer cannot be considered to be acting as a de facto magistrate in relation to this particular defendant.

■ Here we are concerned with reputation rather than acquiescence. It is not important whether each individual has accepted or rejected what the de facto judge has done, but rather, whether by virtue of continuous action the de facto magistrate's conduct is enforceable for all official acts she has performed. The defendant is in no position to contest her actions because all such actions she has taken are given official status, not just those that are accepted by each third party who is affected by her dispositions.

The very principle of "de facto officer" presumes that the acts of such an officer are valid as they involve the interests of the public and third persons.

■ The de facto doctrine was introduced into the law as a matter of policy and necessity to protect the interest of the public and individuals where those interests involved the official acts of persons exercising the duties of an office, without being lawful officers. *Carroll,* 9 Am.Rep. at 423. "The principles are placed on the highground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice. Third persons, from the nature of the case, cannot always investigate the right of one assuming to hold an important office. They have a right to assume that officials apparently qualified and in office are legally such." 63A Am.Jur.2d, Public Officers and Employees § 605 (1984).

■ Although without known appointment, the facts clearly indicate such circumstances of reputation that would induce

the assumption on the part of all concerned, that Pfeffer was lawfully empowered to conduct the judicial affairs which she performed.

The State has argued in the alternative, if we reject their "de facto" claim, we apply the good faith exception to the exclusionary rule as enunciated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984). Since we have ruled favorably to the State on the "de facto" issue, we decline to rule on the "Leon" exception.

We reverse the order of suppression.

All the Justices concur.