**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Jose I. ESCALANTE, Craig A. Neiger and Michael R. Larsen, Defendants and Appellants.**

**Nos. 16689, 16720 and 16744.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1990.

Decided July 11, 1990.

Roger A. Tellinghuisen, Atty. Gen., Diane Best, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

David R. Wurm, Office of Public Defender, Rapid City, for defendants and appellants.

WUEST, Chief Justice.

This is a consolidated appeal of the convictions of three defendants as DWI[1] habitual offenders. We affirm.

## FACTS

Each of the defendants was convicted of DWI and each had prior DWI convictions in his record. Accordingly, state sought to enhance the punishment for each defendant's most recent DWI by alleging his prior convictions in a Part II information filed under SDCL 32–23–4.2.[2] Following trial on the Part II information, each of the defendants was convicted as an habitual DWI offender. Jose Escalante and Michael Larsen were both convicted of felony third offense DWI (SDCL 32–23–4) and Craig Neiger was convicted of misdemeanor second offense DWI (SDCL 32–23–3).

During the trial court proceedings on the Part II information, each defendant raised an appropriate challenge to the validity of one of the prior convictions state was alleging for enhancement purposes. Each defendant argued that one of his prior convictions was invalid due to the signature of an unlicensed prosecuting attorney on the charging document leading to the conviction. In Escalante's case, the questioned charging document was a complaint. In

---

1. "DWI" denotes the offense of driving or physical control of a motor vehicle while under the influence of alcohol (SDCL 32–23–1).

2. SDCL 32–23–4.2 provides:
   In any criminal case brought pursuant to the provisions of § 32–23–3, 32–23–4 or 32–23–4.-6, wherein the information alleges, in addition to the principal offense charged, a former conviction or convictions, the information shall be in two separate parts, each signed by the prosecutor. In the first part the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged.

Neiger's and Larsen's cases, the questioned charging document was an information.

In all three cases, the person who signed the charging document was employed as a Pennington County Deputy State's Attorney. In Escalante's case, the complaint was signed by Gary Sokoll. Sokoll had completed all requirements to practice law and had taken his oath of office the same day he signed the complaint. However, Sokoll was not issued his license to practice law by this court until two days *after* he signed the complaint.

In Neiger's case, the information was also signed by Gary Sokoll. Sokoll took his oath of office one day after he signed the information and was not issued his license to practice law until three days *after* he signed the information.

Finally, in Larsen's case, the information was signed by Jay Miller. Miller had completed all requirements to practice law and had taken his oath of office before signing the information. However, Miller was not issued his license to practice law until nine days *after* he signed the information.

The defendants' challenges to the validity of their prior convictions were rejected by the trial court and each was convicted as a DWI habitual offender as previously noted. Because of the similarity of the issue involved, this consolidated appeal followed.

## ISSUE

WHETHER THE DEFENDANTS WERE ERRONEOUSLY CONVICTED AS DWI HABITUAL OFFENDERS DUE TO USE OF INVALID PRIOR CONVICTIONS FOR ENHANCEMENT PURPOSES?

At the outset, we observe that Escalante's case is distinguishable because it involves a challenge to a signature on a complaint rather than an information. For that reason we will separately address his case below. The following discussion is confined to the Neiger and Larsen cases.

## APPELLANTS NEIGER AND LARSEN

█ We begin with the well settled rule that a judgment of conviction rendered by a court without subject matter jurisdiction is wholly void and without any force or effect whatever. *See, Honomichl v. State,* 333 N.W.2d 797 (S.D.1983). Invalid convictions cannot be used to enhance a sentence for a subsequent criminal offense under the habitual offender statutes. *State v. King,* 383 N.W.2d 854 (S.D.1986). This principle applies equally to DWI habitual offender proceedings. *See, Petition of Brockmueller,* 374 N.W.2d 135 (S.D.1985). Thus, a conviction rendered by a court without subject matter jurisdiction cannot be used to enhance punishment for a subsequent criminal offense under either the habitual offender statutes or the DWI habitual offender provisions.

█ A trial court in a criminal case does not acquire subject matter jurisdiction unless state files a formal and sufficient indictment or information. *Brockmueller, supra; Honomichl, supra.* To be "valid," an information must be signed by a, "prosecuting attorney." SDCL 23A–6–4.

█ Neiger and Larsen argue that the informations leading to their prior DWI convictions were not signed by, "prosecuting attorney[s]" because the deputy state's attorneys who signed them were not licensed attorneys. Therefore, they argue those convictions are invalid and were erroneously used to convict them as DWI habitual offenders.

The term, "prosecuting attorney," in South Dakota includes assistant state's attorneys. SDCL 23A–45–9(14). To serve as a deputy state's attorney a person must be a, *"duly licensed* attorney and counselor at law...." SDCL 7–16–3 (emphasis added). Further:

> [n]o person ... shall be permitted to practice as an attorney and counselor at law in any court of record within this state ... without having *previously obtained* a license for that purpose from the Supreme Court of this state and having become an active member in good standing of the state bar of South Dakota. (emphasis added).

SDCL 16–16–1. These provisions make clear that a person cannot act as an attorney or deputy state's attorney in South Dakota without having, "previously obtained," a license to practice law from this court.[3]

At the time Sokoll and Miller signed the informations at issue in this appeal, they had not yet been issued their licenses to practice law. Accordingly, they could not act as attorneys or deputy state's attorneys and, thus, did not fit within the definition of a, "prosecuting attorney," capable of signing an information. However, we decline to hold that this must necessarily invalidate the convictions obtained on the informations they signed. In the interest of justice, we accept state's argument that the doctrine of the de facto officer should be applied as a means of validating Sokoll's and Miller's signatures on the informations.

A de facto officer, "is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons...." *Merchants' Nat. Bank v. McKinney*, 2 S.D. 106, 120–21, 48 N.W. 841, 845 (1891).

> [A] de facto officer has possession and performs the duties [of an office] under color of right, without being technically qualified in all points of the law to act. The general rule is that the acts of a de facto officer are valid as to third persons and the public until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected.

*State v. Smejkal*, 395 N.W.2d 588, 592 (S.D.1986). The policies underlying the doctrine are, "the protection of those having official business to transact, *and to prevent a failure of public justice*." (emphasis added). *Id.* (*quoting* 63A Am. Jur.2d, *Public Officers and Employees* § 605 (1984)).

The doctrine of the de facto officer is generally applied in four different situations. *See, Smejkal, supra; Merchants' Nat. Bank, supra.* One of these four situations is where the duties of an office are exercised under color of a known or valid appointment but the officer has failed to conform to some precedent, requirement, or condition such as taking an oath, giving a bond or the like. *Id.* A second situation where the doctrine is applied is where the duties of an office are exercised under color of a known appointment, void because the officer was not eligible. *Id.* We find both of these situations present in the instant case.

Both Sokoll and Miller were employed as Pennington County Deputy State's Attorneys, both exercised the duties of that office by signing the informations now at issue and both had fulfilled the requirements for practicing law in this state. The only precedent, requirement or condition preventing them from validly exercising the duties of their office was the taking of an oath and/or the actual issuance of a license to practice law by this court. Both took their oaths and this court issued their licenses within a few days after signing the informations. In the interest of preventing a failure of public justice, we find this case suitable for application of the doctrine of the de facto officer.

Application of the doctrine prohibits the present collateral attack on the deputy state's attorneys' authority and validates their actions in signing the informations filed against Neiger and Larsen. *See Smejkal, supra; Scirica v. State*, 265 N.W.2d 893 (S.D.1978). Accordingly, we find the informations leading to Neiger's and Larsen's prior convictions sufficient as signed by de facto, "prosecuting attorney[s]." It follows that the trial court had subject matter jurisdiction to act on the informations and that the convictions obtained thereon are valid. Accordingly, the convictions were appropriately used to con-

---

**3.** We recognize that there are limited exceptions to this rule which are inapplicable to the present matter. *See, e.g.,* SDCL 16–18–2.1 through SDCL 16–18–2.10 (legal assistance by law students).

vict Neiger and Larsen as habitual DWI offenders.

## APPELLANT ESCALANTE

■ As noted, Escalante argues that a prior DWI conviction used to sustain his conviction as a habitual DWI offender is invalid based upon the signature of an unlicensed prosecuting attorney on the complaint leading to the conviction. We disagree.

Unlike SDCL 23A–6–4 which requires that an information be signed by a prosecuting attorney, there is no such requirement for a complaint. The only statutory requirements for signing a complaint are set forth in SDCL 23A–2–1:

> A complaint is a written statement of the essential facts constituting an offense charged. It must be signed under oath before a person authorized to administer oaths in the state of South Dakota.

Sokoll signed the complaint against Escalante under oath before a notary public. A notary public is a person authorized to administer oaths in this state. SDCL 18–3–1. Therefore, Sokoll met all of the requirements of SDCL 23A–2–1. Moreover, Escalante stipulated before the trial court that a valid information was filed in the case. As we have discussed, this conferred subject matter jurisdiction on the trial court to proceed on the charge and enter a judgment of conviction. *Honomichl, supra.* Accordingly, Escalante's contentions concerning invalidity of the prior conviction are without merit.

Affirmed.

MORGAN, SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs with writing.

HENDERSON, Justice (concurring).

I would not darken the lamp of justice by recognizing a de minimis violation as being jurisdictional or prejudicial error. Rather, I would that the lamp of common sense illuminate the proceedings below. There is the letter of the law and the spirit of the law. Truly, the spirit of the law, but not the letter of the law, was fulfilled.

There is no doubt that South Dakota is guilty of sloppy procedure. However, Appellants have been treated fundamentally fair. All state's attorneys of this state should, in the future, make absolutely sure that a deputy has taken an oath, signed his contract, been duly appointed as a deputy prosecutor and has been licensed by the South Dakota Supreme Court to practice law before that deputy embarks on his official duties.

As recently as 1986 in *Smejkal,* this Court approved the use of the "de facto officer" doctrine. In *Smejkal,* a search warrant was issued by a non-law trained magistrate who had not been appointed by the presiding circuit court judge and no certification of appointment had been made to the South Dakota Supreme Court. The trial court found that since the warrant was not issued by an appointed magistrate, the warrant was void from the beginning. This Court reversed the trial court by holding that the magistrate was a "de facto" judicial officer, and the search warrant was, therefore, valid.

*People v. Pizzaro,* 552 N.Y.S.2d 816 (1990), is a similar case to the one presently before us. In *Pizzaro,* the defendant moved to set aside a felony jury verdict which was obtained by a prosecutor, who was a law school graduate and had passed the bar examination but had not further completed application for admission to practice law. The court, in *Pizzaro,* denied defendant's motion, stating that the prosecutor was acting in a "de facto" status.

In the present case, both Miller and Sokoll had attributes enabling them to achieve "de facto" status, as that concept has long been understood: "One whose title is not good in law but who is, in fact, in unobstructed possession of [a public] office and who is discharging the duties thereof in such a manner as not to present the appearance of an intruder or usurper." *See generally,* 67 C.J.S. Officers § 264.

Recognizing Miller and Sokoll as "de facto officers," their acts may not be collat-

erally attacked or questioned by third parties affected. *Smejkal, supra.*